1  JEAN-PAUL JASSY, State Bar No. 205513
     jpjassy@jassyvick.com
2  MEGHAN FENZEL, State Bar No. 324139
     mfenzel@jassyvick.com
3  JASSY VICK CAROLAN LLP
   355 South Grand Avenue, Suite 2450
4  Los Angeles, California 90071
   Telephone:  310-870-7048
5  Facsimile:   310-870-7010

6  Attorneys for Defendants
   LIONS GATE FILMS INC., LIONS GATE
7  ENTERTAINMENT INC. and STARZ
   ENTERTAINMENT, LLC
8

9

10                     **UNITED STATES DISTRICT COURT**

11              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13  MARC ELLIOT,                          Case No. 2:21-cv-08206-JAK-DFM

                      Plaintiff,          Honorable John A. Kronstadt
14
         vs.                              **DEFENDANTS' REQUEST FOR**
15                                         **JUDICIAL NOTICE IN SUPPORT OF**
    LIONS GATE FILMS INC., LIONS          **SPECIAL MOTION TO STRIKE FIRST**
16  GATE ENTERTAINMENT INC. and           **AMENDED COMPLAINT PURSUANT**
    STARZ ENTERTAINMENT, LLC,             **TO C.C.P. § 425.16**
17
                      Defendants.
18

19

20

21

22

23

24

25

26

27

28

# REQUEST FOR JUDICIAL NOTICE

## I.   INTRODUCTION

Defendants Lions Gate Films Inc., Lions Gate Entertainment Inc. and Starz Entertainment, LLC (collectively, "Defendants") respectfully request, pursuant to Federal Rules of Evidence 201(b) and (d), that this Court take judicial notice of the following categories of materials and documents: (1) the lodged video files of Defendants' four-part documentary series at issue in this dispute, *Seduced: Inside the NXIVM Cult* (the "Series") (Ex. 1); (2) official court records from federal criminal proceedings before the United States District Court for the Eastern District of New York, *U.S. v. Raniere*, No. 1:18-cr-00204-NGG-VMS (Ex. 2); (3) the *fact* that there has been significant news media coverage of NXIVM and Keith Raniere, but Defendants do not seek judicial notice of the truth of the material within the news coverage (Exs. 3–5); and (4) the official New York State Department of Health's Office of Professional Misconduct and Physician Discipline record for Brandon Porter (Ex. 6).  Defendants concurrently submit these materials and documents to the Court along with a Notice of Lodging, all in support of Defendants' Special Motion to Strike the First Amended Complaint ("FAC") pursuant to California Code of Civil Procedure section 425.16, which is brought as a motion to dismiss Plaintiff's claims as a matter of law.

## II.   THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE SERIES AT ISSUE AND RELEVANT CONTEXT

Federal Rule of Evidence 201(b) provides that facts are subject to judicial notice where they are "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Federal Rule of Evidence 201(d) states that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."  "A court may take judicial notice of 'matters of public record' without

1  converting a motion to dismiss into a motion for summary judgment." *Lee v. City of*
2  *Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

3      **A. Lodged Video Files of the Series**

4          In ruling on a motion to dismiss, a court may take judicial notice of items and
5  documents outside the pleadings when such items are referenced in the complaint.
6  *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[A] a court may
7  consider a writing referenced in a complaint but not explicitly incorporated therein if
8  the complaint relies on the document and its authenticity is unquestioned."); *Knievel*
9  *v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005); *Zella v. The E.W. Scripps Co.*, 529
10 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007).  All of Plaintiff's claims in the FAC focus
11 on Defendants' four-part documentary series, *Seduced: Inside the NXIVM Cult* (the
12 "Series").  *See, e.g.*, Dkt. 11 [FAC] ¶¶ 70, 84, 98, 111, 115, 121–123.  Plaintiff quotes
13 from and characterizes segments of the Series in the FAC, alleging implications
14 arising from the Series.  *See, e.g.*, FAC ¶¶ 38–66.  Exhibit 1, the video files of the
15 four-part Series, are therefore judicially noticeable.

16         In addition, because Plaintiff "relies on and references" the Series in the FAC,
17 Exhibit 1 is also "appropriate for incorporation by reference."  *Bernier v. Travelers*
18 *Prop. Cas. Ins. Co.*, 2017 WL 5843396, at *2 (S.D. Cal. Nov. 29, 2017).  Indeed, the
19 Ninth Circuit has explicitly "extended the 'incorporation by reference' doctrine to
20 situations in which the plaintiff's [defamation] claim depends on the contents of a
21 document . . . and the parties do not dispute the authenticity of the document."
22  *Knievel*, 393 F.3d at 1076–79 (considering web pages attached to a motion to dismiss
23 under the incorporation by reference doctrine and affirming dismissal of defamation
24 claim).  Plaintiff's claims depend on—and revolve entirely around—the Series.
25 Exhibit 1 should therefore be incorporated by reference, and judicial notice should be
26 taken of Exhibit 1.
27 ///
28

**B. Federal Judicial Records from Criminal Matter**

The Court should also take judicial notice of relevant facts not subject to reasonable dispute.  Fed. R. Evid. 201(b).

Exhibit 2, federal court records from the criminal case *U.S. v. Raniere*, No. 1:18-cr-00204-NGG-VMS (E.D.N.Y), are subject to judicial notice because they are a source "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts "may take judicial notice of court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of numerous briefs and filings from other litigation); *Hemphill v. Kimberly-Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009) ("A court may take judicial notice of public records from other proceedings."); *Gharb v. Mitsubishi Elec. Corp.*, 148 F. Supp. 3d 44, 46 n.1 (D.D.C. 2015) (taking judicial notice of "publicly filed documents in related litigation").

The docket report and filings from the U.S. District Court for the Eastern District of New York case are judicially noticeable.  Episode Four of the Series focuses on the criminal investigation and trial of Raniere, which ended with a 120-year federal prison sentence.  Plaintiff names Raniere 44 times in the FAC.  The prosecution of NXIVM leader Keith Raniere for sex trafficking, forced labor, and racketeering is related to this litigation.

Further, Plaintiff was relevant to Raniere's criminal proceedings.  Plaintiff's name and story battling Tourette Syndrome fill three pages of the memo Raniere's legal team submitted advocating for a lighter sentence.  *See* Exhibit 2, Dkt. 925 at 33–36.  Exhibit 2, the docket report and publicly filed defendant's sentencing memo in *U.S. v. Raniere*, are therefore judicially noticeable.

**C. Public Interest in the Controversies Concerning NXIVM and Raniere**

In the defamation context, courts regularly take judicial notice of articles which add to the "broader . . . context" of the dispute.  *Condit v. Dunne*, 317 F. Supp. 2d

344, 357 (S.D.N.Y. 2004).  It is proper to take judicial notice of various publications introduced "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)); *see also Ganino v. Citizens Utilities Co.*, 228 F.3d 158, 166 n.8 (2d Cir. 2000) (taking judicial notice of "well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 n.5 (C.D. Cal. 1998) (taking judicial notice of the level of publicity and public discussion surrounding the O.J. Simpson trial); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) ("the Court can take judicial notice of articles written by and about [the plaintiff]").  Here, the public interest in NXIVM and Plaintiff's role as a public figure in the NXIVM scandal provide broader context to this dispute.

The Court should take judicial notice of the fact that NXIVM and Raniere have been the subject of extensive media coverage, as evidenced by Exhibits 3, 4, and 5. Exhibit 3 reflects how both local and national media outlets published in-depth coverage about NXIVM and Keith Raniere prior to the federal criminal investigation. Exhibit 4 reflects how, beginning in 2017 and throughout the criminal investigation and prosecution, NXIVM and Raniere garnered significant media coverage across print media, television, podcasts, and docuseries.  Such coverage provides "evidence of the 'media frenzy'" surrounding NXIVM and Raniere, and the Court may take judicial notice not of the substance of the articles but of the "widespread publicity" that preceded Defendants' Series.  *See Condit v. Dunne*, 317 F. Supp. 2d at 358.

Exhibit 5 is judicially noticeable to the extent it reflects how Plaintiff himself has been the subject of media coverage following Raniere's criminal conviction.  Just as the media coverage of the O.J. Simpson trial was judicially noticeable in a defamation case brought by Johnny Cochran, where the defendant was "weighing in

on the public debate" about the trial and Cochran's legal theories, the media coverage of the NXIVM scandal (and Plaintiff's presence in the coverage) should be judicially noticeable here. *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 n.5 (C.D. Cal. 1998). This is a defamation case brought by an admitted NXIVM member, *see* FAC ¶¶ 20–37, regarding Defendants' contributions to the public debate about NXIVM. The media coverage about Plaintiff is judicially noticeable and relevant to the determination that the NXIVM scandal is a matter of public interest and Plaintiff voluntarily inserted himself into the controversy concerning NXIVM.

Similarly, as the Court can take judicial notice of the existence of "articles written by and about the plaintiff," it can take judicial notice of Plaintiff's nationally broadcast press conferences and media appearances. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013). The fact of this widespread media coverage, the public interest in NXIVM, and Plaintiff's ongoing presence in this public discussion are generally known within the trial court's territorial jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(1), (2); *see also Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir.), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) (taking judicial notice of the President's tweets); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 934 (C.D. Cal. 2019) (taking judicial notice of a party's statements made on his Twitter account); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 159 n.4 (S.D.N.Y. 2020) (taking judicial notice of a defamation plaintiff's open letter and related news coverage); *Elliott v. Donegan*, 469 F. Supp. 3d 40, 47 n.2 (E.D.N.Y. 2020) (taking judicial notice of the plaintiff's writings on related issues "in furtherance of [defendant's] argument that Plaintiff qualifies as a limited-purpose public figure.") Defendants seek judicial notice of the *existence* of this media coverage and the *fact* of Plaintiff's media appearances, not of the truth of the matter asserted in Exhibits 3, 4, or 5. *See id.*

**D. State Agency Records**

Finally, the Court may take judicial notice of official New York State Department of Health records as a source whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008) (taking judicial notice of a state agency order); *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2020 WL 10575294, at *2 (N.D. Cal. Mar. 25, 2020) (taking judicial notice of orders from administrative agencies and documents found on government agency websites).  Judicial notice of state agency decisions is appropriate where "the existence of the opinion is not in dispute, nor are its contents."  *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010) (holding the district court erred in denying judicial notice of a government agency action).  The New York state entity with the power to conduct professional misconduct and disciplinary proceedings for New York physicians is the Office of Professional Medical Conduct, part of the New York Department of Health. *See Mir v. Kirchmeyer*, No. 20-1659, 2021 WL 4484916, at *3 n.4 (2d Cir. Oct. 1, 2021) (citing N.Y. Pub. Health Law § 230 and taking judicial notice of New York state agency websites detailing oversight authorities for professional misconduct); *see also Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 147 n.1, 173 n.13 (S.D.N.Y. 2002) (taking judicial notice of the 1999 Determination and Order issued by the New York State Board for Professional Medical Conduct and subsequent proceedings suspending and then revoking plaintiff's medical license).

Exhibit 6 is a copy of the New York State Department of Health's Office of Professional Misconduct and Physician Discipline search result for Brandon B. Porter, showing that his medical license was revoked.  While the Plaintiff appears onscreen in Episode Four of the Series, text appears noting that Brandon Porter's medical license was revoked.  *See* Ex. 1, Ep. 4, at 1:18:21.  Plaintiff alleges that commentary about "Dr." Porter's work with NXIVM in the Series was defamatory.

FAC ¶¶ 51–54.  The Court may take judicial notice that Brandon Porter is no longer a licensed medical doctor and had his medical license revoked for "professional misconduct . . . in a manner which evidences moral unfitness."  Ex. 6.  Exhibit 6 is judicially noticeable.

## III.   CONCLUSION

Defendants respectfully request that the Court take judicial notice of (1) the lodged video files of the four-part documentary series at issue in this dispute, *Seduced: Inside the NXIVM Cult* (Ex. 1); (2) official court records from federal criminal proceedings before the United States District Court for the Eastern District of New York, *U.S. v. Raniere*, No. 1:18-cr-00204-NGG-VMS (Ex. 2); (3) the fact that there has been significant news media coverage of NXIVM and Keith Raniere; and (Exs. 3–5) (4) the official New York State Department of Health's Office of Professional Misconduct and Physician Discipline record for Brandon Porter (Ex. 6).

DATED:      February 9, 2022          Respectfully submitted,

JASSY VICK CAROLAN LLP


_____/s/Meghan Fenzel_____
MEGHAN FENZEL
Attorney for Defendants
LIONS GATE FILMS INC., LIONS GATE
ENTERTAINMENT INC. and STARZ
ENTERTAINMENT, LLC