Joseph M. Tully (CASBN: 201187)
Tully & Weiss Attorneys at Law
713 Main Street
Martinez, CA 94553
Phone: (925) 229-9700
Fax: (925) 231-7754
Email: Joseph@Tully-Weiss.com

Attorneys for Plaintiff Marc Elliot

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ELLIOT,<br><br>**Plaintiff,**<br><br>v.<br><br>LIONS GATE FILMS INC., LIONS GATE ENTERTAINMENT INC., and STARZ ENTERTAINMENT LLC<br><br>**Defendants.** | Case No.: 2:21-cv-08206-JAK-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST-AMENDED COMPLAINT** |

The Plaintiff, Marc Elliot, by and through his counsel, Joseph M. Tully, hereby respectfully submits the following Memorandum of Points and Authority in opposition of Defendants' Special Motion to Strike Plaintiff's First-Amended Complaint.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... - 2 -

TABLE OF AUTHORITES ....................................................................................... - 3 -

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... - 4 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... - 6 -

I.    STANDARD........................................................................................................... - 6 -

II.    AS TO ALL COUNTS IN PLAINTIFF'S FIRST-AMENDED COMPLAINT,
DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS PRESENT A GENUINE
ISSUE OF FACT BECAUSE THEY ARE FALSE AS A MATTER OF LAW IN THAT THE
PUBLICATIONS WERE INTENTIONALLY AND DECEPTIVELY MANIPULATED BY
THE DEFENDANTS IN ORDER TO MATERIALLY ALTER THE MEANING CONVEYED
BY THE SPEAKERS, SO AS TO CONVEY A FABRICATED IMPLICATION OF PLAINTIFF
TO THE VIEWERS.................................................................................................. - 7 -

III.    DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS ARE NOT A
MATTER OF "PUBLIC INTEREST" AS A MATTER OF LAW, AND ARE THUS NOT
SUBJECT TO THE PROTECTIONS OF 425.16, subdivision (e). ............................ - 9 -

IV.    DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS USING
PRIVATELY FILMED, OUT-OF-CONTEXT FOOTAGE WERE "FALSE," AS SUCH THEY
ARE NOT A MATTER OF PUBLIC INTEREST AS A MATTER OF LAW BECAUSE THEY
BEAR NO DEGREE OF CLOSENESS TO DEFENDANTS' ASSERTED PUBLIC INTEREST.
- 11 -

V.    THE COURT MUST CONSIDER THE ENTIRETY OF THE DOCUMENTARY
CONTAINING THE DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS IN
COMPARISON WITH THE ENTIRETY OF THE PLAINTIFF'S EVIDENCE AND NOT JUST
THE PARTS ADVANCED BY THE DEFENDANTS. ............................................... - 14 -

VI.    PLAINTIFF, EVEN IF CONSIDERED A PUBLIC FIGURE, CAN PROVE ACTUAL
MALICE ................................................................................................................ - 15 -

VII.    DEFENDANTS' ARGUMENTS AS TO PLAINTIFF'S THIRD, FOURTH, AND FIFTH
CAUSES OF ACTION FAIL AS A MATTER OF LAW. THUS, DEFENDANTS MOTION TO
STRIKE IN REGARD MUST BE DISMISSED. ...................................................... - 16 -

VIII.    DEFENDANTS' ARGUMENTS AS TO PLAINTIFF'S THIRD, FOURTH, AND
FIFTH CAUSES OF ACTION FAIL AS A MATTER OF LAW. THUS, DEFENDANTS
MOTION TO STRIKE IN REGARD MUST BE DISMISSED. .................................. - 16 -

IX.    IN THE ALTERNATIVE, AND IF NECESSARY, PLAINTIFF REQUESTS THAT THE
HEARING BE CONTINUED AND HE BE ALLOWED TO CONDUCT LIMITED
DISCOVERY........................................................................................................ - 18 -

CONCLUSION. ..................................................................................................... - 18 -

# **TABLE OF AUTHORITES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................... - 18 -

*Balzaga v. Fox News Network*, LLC, 173 Cal.App.4th 1325 (2009) ..... - 5 -, - 6 -, - 7 -, - 14 -

*Bartholomew v. Youtube, LLC.,* 17 Cal.App.5th 1217 (2017) ........................... - 6 -

*Dziubla v Piazza, 59* Cal.App.5th 140 (2020) ......................................... - 6 -

*FilmOn.com Inc. v. DoubleVerify Inc.,*7 Cal.5th 133 (2019) ........................ - 9 -, - 10 -, - 11 -

*Hailstone v. Martinez* ,169 Cal.App.4th 728 (2008) ............................... - 16 -

*Local TV, LLC v. Superior Court of L.A. Cnty.*, 3 Cal.App.5th 1 (2016) ........................ - 17 -

*Manzari v. Associated Newspapers Ltd*, 830 F.3d 881 (9th Cir. 2016) .......................... - 15 -

*Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496 (1991) ........................... - 7 -

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ...................... - 18 -

*Monster Energy Co. v. Schechter*, 7 Cal.5th 781 (2019) ................................... - 6 -

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). ............................... - 15 -

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008) ...................... - 10 -

*Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010) ...................... - 5 -, - 7 -, - 8 -, - 13 -

*Rand Res., LLC v. City of Carson*, 6 Cal.5th 610 (2019) .............................. passim

*Rogers v. Home Shopping Network*, 57 F.Supp.2d 973 (C.D. Cal. 1999) ...................... - 18 -

*U.S. ex rel. Newsham v. Lockheed Missiles Space Co., Inc.,* 190 F.3d 963 (9th Cir. 1999) .- 6 -

*Weinberg v. Feisel,* 110 Cal.App.4th 1122 (2003) ......................... - 5 -, - 9 -, - 13 -

*Zamani v. Carnes,* 491 F.3d 990 (9th Cir. 2007) ........................... - 16 -

**Statutes**

Cal. Civ. Code., § 3344, subd. (d) ...................... - 17 -

Cal. Code Civ. Proc., § 425.16 subd. (g) ...................... - 18 -

Cal. Code Civ. Proc., § 425.16, subd. (e) ...................... - 11 -

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants hope that their deceptively manipulated publications contained in their documentary series, "Seduced: Inside the NXIVM Cult" will distract this Court from their intentionally defamatory and invasive conduct towards Plaintiff.

Defendants admit that the entirety of their documentary series at issue was based on a set of articles dating back to 2003 and 2017, the claim of abuse suffered by Ms. Oxenberg at the direction of Mr. Raniere, and the news coverage of the criminal trial. Defendants admit the prosecution of the criminal trial was primarily focused on a women's-only secret society known as "DOS," comprised of a small group of female NXIVM members and Mr. Raniere. ECF No. 224:6-10; 225:2-14; 226:3-5. Defendants admit that NXIVM was not a named defendant in the criminal case, *U.S. v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019). ECF No. 264-288. Finally, Defendants also admit that Plaintiff was not criminally prosecuted. ECF No. 227:9-10.

Defendants deviously direct this Court to assertions and generalities abstracted from Plaintiff's conduct, and a synecdoche theory in that Defendants contend that Plaintiff's private participation in other parts of NXIVM, unrelated to DOS, exemplifies the abuse of Ms. Oxenberg and the conduct alleged in *U.S. v. Raniere*. This is nothing more than a red herring and a cunning attempt by Defendants to distract this Court from the relevant issue: Defendants, through deception and manipulation of private content, portrayed Plaintiff as someone who condones the abuse of Ms. Oxenberg, women in general, and the conduct in *U.S. v. Raniere*, solely because he voiced his positive experience with NXIVM and his opinion on fundamental fairness within the criminal justice system.

As the state of the law would have it, Defendants' intentionally deceptive and manipulated defamatory publications, designed to portray its targets as vile and repulsive, are not true and are not protected expressions in that such intentionally deceptive and manipulated publications are not a matter(s) of "public interest" as a

matter of law. Accordingly, Defendants' intentionally deceptive and manipulated publications are not subject to the protections of California Code of Civil Procedure Section 425.16, subdivisions (e) because:

1. ***The publications are false as a matter of law in that the publications were deceptively manipulated by the Defendants to materially alter the meaning conveyed by the speakers, to convey a fabricated implication of Plaintiff***. *Price v. Stossel*, 620 F.3d 992, 994 (9th Cir. 2010) [emphasis added].

2. The publications are based on Defendants' use of "***private footage never intended to be seen by the public,***" which as a matter of law did not become a matter of public concern "***just because Defendants published the footage to the public.***" *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 621 (2019); *Weinberg v. Feisel,* 110 Cal.App.4th 1122, 1132 (2003) [emphasis added].

3. The Defendants materially altered the original context and true meaning of the footage at issue to convey a fabricated implication of Plaintiff, *Price* 620 F.3d at 922 (9th Cir. 2010), and thus are "***not a matter of 'public interest' as a matter of law because they bear no degree of closeness to Defendants' asserted public interest.***" *Weinberg v. Feisel,* 110 Cal.App.4th 1122, 1132 (2003) [emphasis added]

Further, because a review of Defendants' deceptively manipulated publications in its entirety is mandatory, *Balzaga v. Fox News Network*, LLC, 173 Cal.App.4th 1325, 1339 (2009), and the test for libel is not quantitative as libel can exist in a single sentence *Id*. at 1388, a view of Defendants' deceptively manipulated publications in comparison to Plaintiff's evidence shows that Plaintiff has satisfied the low burden of proving the probability of success in this case, *Dziubla v Piazza* 59 Cal.App.5th 140, 148 (2020) [*Plaintiffs only need to show "minimal merit"*], and Defendants motion to strike should be dismissed.

Lastly, because the anti-SLAPP statute mandates an award of attorney fees to a plaintiff when the court denies the SLAPP motion and finds that the motion was

frivolous, *See* Cal Civ. Code § 425.16, subd. (c); *Moore v. Shaw*, 116 Cal.App.4th 182, 199 (2004), Plaintiff also moves the Court, based on the facts and admissions of Defendants contained in their moving papers and addressed herein, the state of all the evidence as addressed herein, and a likely factual finding by this Court that Defendants' Motion to Strike was frivolous, for an award of attorney's fees and costs for Plaintiff. Defendants knew that the representations they made, at the time they made them, were deceptive and manipulated and thus were false.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STANDARD

Plaintiffs only need to show "minimal merit" to defeat the special motion to strike. *Dziubla v Piazza, 59* Cal.App.5th 140, 148 (2020) Further, the court "does not weigh the credibility or comparative probative strength of competing evidence but it "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." *Monster Energy Co. v. Schechter*, 7 Cal.5th 781, 795 (2019).

California's anti-SLAPP law is substantive in nature, and therefore a federal court exercising diversity jurisdiction follows California's law. *See U.S. ex rel. Newsham v. Lockheed Missiles Space Co., Inc.,* 190 F.3d 963, 972 (9th Cir. 1999).

Under California law, in determining whether a publication is defamatory, the publication is to be measured "***not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader.***" *Bartholomew v. Youtube, LLC.,* 17 Cal.App.5th 1217, 1227 (2017) [emphasis added]. A defendant is liable for what is insinuated, as well as for what is stated explicitly. *Id.* [citations omitted.]

Not every word of an allegedly defamatory publication has to be false and defamatory to sustain a libel action. "[T]he test of libel is not quantitative; a single sentence may be the basis for an action in libel even though buried in a much longer text" *Balzaga v. Fox News Network*, LLC, 173 Cal.App.4th 1325, 1338 (2009). "The

1    defamatory character of language is measured 'according to the sense and meaning . .

2    . which such language may fairly be presumed to have conveyed to those to whom it

3    was published.'" *Id.*

4    **II.   AS TO ALL COUNTS IN PLAINTIFF'S FIRST-AMENDED**
     **COMPLAINT, DEFENDANTS' DECEPTIVELY MANIPULATED**

5    **PUBLICATIONS PRESENT A GENUINE ISSUE OF FACT**

6    **BECAUSE THEY ARE FALSE AS A MATTER OF LAW IN THAT**
     **THE PUBLICATIONS WERE INTENTIONALLY AND**

7    **DECEPTIVELY MANIPULATED BY THE DEFENDANTS IN**
     **ORDER TO MATERIALLY ALTER THE MEANING CONVEYED**

8    **BY THE SPEAKERS, SO AS TO CONVEY A FABRICATED**

9    **IMPLICATION OF PLAINTIFF TO THE VIEWERS.**

10   The Ninth Circuit Court of Appeals in *Price v. Stossel* 620 F.3d 992 (9th Cir.

11   2010) noted that a defamation action is plausible where a party broadcasts a

12   television program with statements made by a public figure but presents the

13   statements in a misleading context thereby changing the viewers' understanding of

14   the speaker's words. *Id*. at 996.

15       California law recognizes that a defamatory statement can be "'expressly stated

16   or implied….' If the defendant juxtaposes a series of facts so as to imply a

17   defamatory connection between them, or otherwise creates a defamatory implication,

18   he may be held responsible for the defamatory implication, even though the particular

19   facts are correct." *Id*. at 1003 (citations omitted).

20       Further, the U.S. Supreme Court in *Masson v. New Yorker Magazine, Inc.,* 501

21   U.S. 496 (1991) opined that "an exact quotation out of context can distort meaning,

22   although the speaker did use each reported word." *Id.* at 515. The Nation's High

23   Court further noted that expressions of opinion present a genuine fact issue, holding,

24   "A reasonable trier of fact could find that the so-called expressions of opinion could

25   be interpreted as including false assertions as to factual matters." *Id*. at 516.

26       In *Price*, Defendant broadcasted a television report on wealthy preachers, as

27   investigated by a non-profit watchdog group dedicated to improving the transparency

28   and accountability of Christian ministries. During this television report, Defendant

used original video footage, including silent footage with voice-overs from news presenters, of Plaintiff Price in a sermon where he was describing a wealthy man with a spiritually unfulfilled life. *Price,* 620 F.3d at 996-98. The original context of Price's statements indicated he was discussing a hypothetical individual but the context in the broadcast suggested he was discussing himself. *Id.*

In reversing the district court's dismissal of Price's claim, the *Price* Court opined, "***Where the published quotation contains a material alteration of the meaning conveyed by the speaker, the published quotation is false.***" *Id.* at 994. Accordingly, the *Price* court found that "the context in which Price's words were presented materially changed the words' meaning" and that Price had a "reasonable possibility of proving that the clip, as broadcast, was false." *Id. at 996.*

Here, Defendants cut and spliced together different audio clips by Mr. Raniere from a private discussion at a men's-only event to create a sinister message which was the opposite of Mr. Raniere's message in the original, unedited discussion and rounded off their falsehood by packaging this falsely contrived footage with a phony applause track. Defendants then immediately followed this footage with a nonpublic video testimonial by Plaintiff relating to a different, men's and women's event, which occurred roughly a year after the edited speech by Mr. Raniere, to make it seem as if Plaintiff was supporting the sinister message. Defendants also cruelly used out-of-context footage of Plaintiff suffering through a Tourette's episode, where his body is moving in an abrupt, abnormal manner. Defendants juxtaposed all the above and more with commentary from purported cult experts and rape victims who were horrifically abused to imply that: (1) NXIVM was a sex cult that murders, brands, and rapes women, which is comparable to other cults associated with the massacres at Waco, Jonestown, and Heaven's Gate, that NXIVM has the same indoctrination and coercive persuasion process as the terrorist organizations ISIS and Al-Qaida, and was performing fright experiments analogous to those performed by the Nazis; (2) Plaintiff as a member, proctor, and loyalist of NXIVM, is as dangerous as a ISIS and

Al-Qaida terrorist; (3) Plaintiff condones the murder, rape and mutilation of women because he recruits for NXIVM; (4) Plaintiff is a repulsive person because he believes that courses by NXIVM, which advocate for the sexual abuse against women, is the 'Harvard' of how to treat women; (5) Plaintiff is a weaponized, violent person capable of killing at the command of Mr. Raniere; (6) Plaintiff, a man of Jewish decent, participates in, and perpetrates experiments just like Nazis did; and (7) Plaintiff is a loyalist who performs readiness drills and is ready to act violently at Mr. Raniere's command. *See* ECF No. 262 generally; Compare to Ex. A generally.

As it is clear from Plaintiff's evidence, Defendants intentionally took exact quotations out of context to intentionally distort the juxtaposed series of facts to imply a defamatory connection between them and must be held responsible. Consequently, Plaintiff has satisfied the low burden of proving the probability of success in this case and Defendants' motion to strike must be dismissed.

### III.  DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS ARE NOT A MATTER OF "PUBLIC INTEREST" AS A MATTER OF LAW, AND ARE THUS NOT SUBJECT TO THE PROTECTIONS OF 425.16, subdivision (e).

The California Supreme Court and appellate courts have uniformly opined that "*a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest*," the High Court elaborated that "*a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people*." *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 621 (2019) [emphasis added]; see also *See Weinberg v. Feisel,* 110 Cal.App.4th 1122, 1132.

In 2019, the California Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.,*7 Cal.5th 133 (2019) refused to extend Defendants the protections of Section 425.16, subdivisions (e)(4), where Defendants published Plaintiff's private information. *See Id.* generally.

*FilmOn.com Inc*., concerned alleged disparaging statements about the web-

OPPOSITION TO SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

based entertainment programming distributed by the plaintiff, FilmOn.com Inc. The defendant, DoubleVerify Inc. provided confidential reports to its paying clients which classified FilmOn.com websites under categories of sites that engage in copyright infringement and contain "adult content." *Id*. at 140–142.

Before reaching its decision, the High Court established the necessary inquiry into the applicability of Subdivision (e)(4) by opining that such an inquiry is subject to two-part analysis rooted in the statute's purpose and internal logic in that (1) courts must first examine "what public issue or issue of public interest" the speech in question implicates, and (2) courts must then examine "what functional relationship exists between the speech and the public conversation about some matter of public interest." The High Court then specifically denotes that, regarding the second prong of this analysis, "context proves useful." *Id*. at 149.

Although in *FilmOn.com Inc.*, the High Court also affirmed certain considerations put forward by the Courts of Appeal, such as (a) whether the "subject of the speech" was a person in the public eye or could affect large numbers of people, and (b) whether the activity occurred in the context of an ongoing controversy or affected a community in a way similar to that of a governmental entity. *Id*. at 145. Notably, the High Court clearly ignored the broad language in *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008), which indicated that a public issue "is any issue in which the public is interested," even if insignificant. *Id*. at 1042. Instead, the Court opined that since the catchall provisions of subdivision (e)(4) are "less firmly anchored to any particular context" than the other (e) subdivisions, "courts should engage in a relatively careful
analysis of whether a particular statement falls within subdivision (e)(4)" *Id*. at 145. Nonetheless, the High Court held that these reports were not in connection with an issue of public interest because the information in the reports ***did not enter the public sphere and the parties never intended such information to enter the public sphere*** thus denying the defendants the protections of Section 425.16, subdivisions

(e)(4). *Id*. at 153 [emphasis added].

Here, analogous to *FilmOn.com Inc.,* Defendants admit that their deceptively manipulated publications were based (1) footage from anonymous sources, and (2) that some of the footage was **"Never intended to be seen by the public."** ECF No. 262 Ep 1. at 01:32-01:43; Ep 2. at 00:18-00:22; Ep 3. at 00:21-00:24; Ep 4. at 00:31-00:36 [emphasis added]. Thus, Defendants through their own admission concede that their publications are not subject to the protections Section 425.16, subdivision (e) as such information was "**never intended to be seen by the public**." *Id*. [emphasis added.] Axiomatically, public footage does not come from "anonymous sources."

Moreover, a review of Plaintiff's evidence, which contains the original footage that Defendants intentionally manipulated and published, shows that the statements therein were communicated and filmed in a private setting, to a small group of people. Ex. A generally. In fact, neither the audio of Mr. Raniere's speech from the men's-only event nor Plaintiff's video testimonial about the men's and women's event was ever made available to the public, nor was it intended to be made available to the public. This calculus remains unaltered even though Defendants published the footage to the public. *Rand Res., LLC, 6 Cal.5th at 621 (2019).* Consequently, Defendants' publications are not subject to protections of 425.16, subdivision (e)(4) as a matter of law. Consequently, Defendants' motion to strike should be dismissed

## IV.   DEFENDANTS' DECEPTIVELY MANIPULATED PUBLICATIONS USING PRIVATELY FILMED, OUT-OF-CONTEXT FOOTAGE WERE "FALSE," AS SUCH THEY ARE NOT A MATTER OF PUBLIC INTEREST AS A MATTER OF LAW BECAUSE THEY BEAR NO DEGREE OF CLOSENESS TO DEFENDANTS' ASSERTED PUBLIC INTEREST.

Defendants admit that the entirety of the documentary at issue was based on a set of articles dating back to 2003 and 2017, the claim of abuse suffered by Ms. Oxenberg at the direction of Mr. Raniere, and the news coverage of the criminal trial. Defendants admit the prosecution of the criminal trial was primarily focused on a

women's-only secret society known as "DOS," comprised of a small group of female NXIVM members and Mr. Raniere. *See* ECF No. 224:6-10; 225:2-14; 226:3-5. Defendants admit that NXIVM was not a named defendant in the criminal case, *U.S. v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019). See ECF No. 264-288. Finally, Defendants also admit that Plaintiff was not criminally prosecuted. See ECF No. 227:9-10.

Even in abstract, if the Court were to find the forgoing to be an issue of public interest, as Defendants contend, the calculus does not end there. As the California High Court opined, ***"[T]the focus of our inquiry must be on 'the specific nature of the speech,' rather than on any 'generalities that might be abstracted from it.' Defendants cannot merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue."*** *FilmOn.com Inc.,* 7 Cal.5th at 152 [emphasis added].

Here, Defendants simply point to NXIVM and Mr. Raniere's media attention, the federal prosecution and conviction of Mr. Raniere in *U.S. v. Raniere*, where prosecutors focused on a women's-only secret society under NXVIM known as "DOS," the abuse of India Oxenberg, and assert that Plaintiff is a matter of public interest because he was a member of NXIVM, a limited public figure who voiced his success in beating Tourettes after participating in NXIVM, and subsequently voiced his opinion on the wrongful conviction of Mr. Raniere. *See* ECF No. 224:6-10; ECF No. 226:3-5; 225:16-26; 231:17- 233:8.

Defendants' assertions are generalities abstracted from Plaintiff's conduct, and a synecdoche theory in that Defendants contend that Plaintiff's private participation in other parts of NXIVM, unrelated to DOS, exemplifies the abuse of Ms. Oxenberg and the conduct alleged in *U.S. v. Raniere*. This is nothing more than a red herring and a cunning attempt by Defendants to distract this Court from the relevant issue: Defendants, through intentional deception and manipulation of private audio and video content, portrayed Plaintiff as someone who condones the abuse of Ms.

Oxenberg, women in general, and the conduct in *U.S. v. Raniere*, solely because he voiced his positive experience with NXIVM after using its courses to beat his severe case of Tourettes and his opinion on fundamental fairness within the criminal justice system.

Defendants' assertions are nothing more than a generalized reference to a theory of public interest which in actuality is unrelated to the public debate advanced by the Defendants. It is not enough that the statement refers to a subject of purported widespread public interest; the statement must in some manner itself contribute to the public debate advanced by the defendants. *FilmOn.com Inc.,*7 Cal.5th at 152.

Defendants' deceptively manipulated publications do not contribute to their advanced public interest. Simply put, it is not the status of a party but rather the content of the publication which informs the public interest issue. "***A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people***." *Rand Res., LLC,* 6 Cal.5th at 621 (2019) [emphasis added]; see also *Weinberg,* 110 Cal.App.4th at 1132. "***Those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure***." *Weinberg*, 110 Cal.App.4th at 1132. Moreover, the statement cannot contribute to the public debate through manipulation and deception, either and therefore Section 425.16, subdivision (e) does not apply. *See e.g. Price v. Stossel*, 620 F.3d 992, 996 (9th Cir. 2010).

Here, as noted above, Defendants cut and spliced together different audio clips by Mr. Raniere from a private discussion at a men's-only event to create a sinister message which was the opposite of Mr. Raniere's message in the original, unedited discussion and rounded off their falsehood by packaging this falsely contrived footage with a phony applause track. Defendants then immediately followed this footage with a nonpublic video testimonial by Plaintiff relating to a different, men's and women's event, which occurred roughly a year after the edited speech by Mr. Raniere, to make it seem as if Plaintiff was supporting the sinister message.

1   Defendants also cruelly used out-of-context footage of Plaintiff suffering through a

2   Tourette's episode, where his body is moving in an abrupt, abnormal manner.

3   Defendants juxtaposed all the above with commentary from purported cult experts

4   and rape victims who were horrifically abused to harm Plaintiff. Not only was the

5   original footage private, its content was meant to promote harmony between men and

6   women and it did not espouse violence towards women which was Defendants'

7   advanced public interest. Moreover, the footage was deceptively manipulated and

8   was therefore false.

9       For all the above reasons, Defendants' deceptively manipulated footage was

10  not a matter of public interest. Consequently, Defendants' motion to strike should be

11  dismissed

12  **V.  THE COURT MUST CONSIDER THE ENTIRETY OF THE DOCUMENTARY CONTAINING THE DEFENDANTS'**

13  **DECEPTIVELY MANIPULATED PUBLICATIONS IN COMPARISON WITH THE ENTIRETY OF THE PLAINTIFF'S EVIDENCE AND NOT**

14  **JUST THE PARTS ADVANCED BY THE DEFENDANTS.**

15      Defendants primarily rely on *Balzaga v. Fox News Network*, LLC, 173

16  Cal.App.4th 1325 (2009) to contend that they did not publish defamatory statements

17  or implications about Plaintiff. ECF No. 233:21-239:19. They do so to their

18  disadvantage.

19      In *Balzaga*, the Court noted that when the alleged false statement is contained

20  in a television broadcast, the court must examine the statement in context with the

21  remainder of the broadcast. *Id*. at 1339 The *Balzaga* court found that the error was in

22  plaintiff's failure to consider the alleged false statement in context with the remainder

23  of the news report in that no reasonable viewer who viewed and heard the broadcast

24  could have received the alleged false impression. *Id*.

25      In contrast, here, although Defendants claim that Plaintiff is only briefly

26  featured in the documentary, that he is not the focus of the series, and that he is not

27  featured in parts of the series that discuss NXIVM's criminal conduct ECF No.

28  226:3-227:10, these assertions only go against Defendants because Defendants

expressly use Plaintiff's likeness, expressly identify Plaintiff as a NXIVM recruiter, proctor, and loyalist, within a context where rape, abuse, murder, and mutilation of women is significantly emphasized as being perpetrated by "NXIVM leaders," where criminal conduct is expressly alleged against "NXIVM leaders," and where comparisons to cults and terrorist organizations are attributed to "NXIVM leaders." ECF No. 262 Ep.1 at 10:07; 262 Ep. 2 at 20:23-20:35; 262 Ep. 2 at 1:18:14; ECF No. 262 generally. Defendants' argument in regard is thus invalid because it would be reversable error to consider only the parts that the Defendants suggest and where a reasonable viewer of the Seduced series would certainly receive Defendants' false impression that Plaintiff supports violence against women.

## VI. PLAINTIFF, EVEN IF CONSIDERED A PUBLIC FIGURE, CAN PROVE ACTUAL MALICE

Actual malice is a publication with the knowledge that a statement is false, or with a reckless disregard for truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). A public figure in a defamation case cannot recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, however, at the anti-SLAPP stage, a public figure who sues for defamation need only establish a probability that he or she can produce such clear and convincing evidence. *Manzari v. Associated Newspapers Ltd*, 830 F.3d 881, 889. (9th Cir. 2016)

Here, a comparison between Plaintiff's evidence and Defendants' evidence shows that Defendants were aware of the true contents of the original footage at issue and manipulated it to form a false and deceptive narrative, which they knowingly and intentionally published. Defendants knew the direct and implied statements they created were not true. This is malice. *See* ECF No. 262 generally; Compare to Ex. A generally.

//

//

**VII.   DEFENDANTS' ARGUMENTS AS TO PLAINTIFF'S THIRD, FOURTH, AND FIFTH CAUSES OF ACTION FAIL AS A MATTER OF LAW. THUS, DEFENDANTS MOTION TO STRIKE IN REGARD MUST BE DISMISSED.**

An anti-SLAPP motion is not the correct vehicle for asserting a claim for dismissal based on surplusage. *Hailstone v. Martinez*, 169 Cal.App.4th 728, 742 (2008).

Here, Defendants argue that Plaintiff's Third, Fourth, and Fifth causes of action should be dismissed as surplusage as they purportedly contain the same facts as the defamation claims. ECF No. 244:27-245:18. A quick view of the facts deems Defendants' contention to be false. Regardless, an anti-SLAPP motion is not the correct vehicle for asserting this position. Rather, this argument is properly the subject of a demurrer and Defendants' Motion to Strike in regard must be dismissed. *Id*. at 743. Further, the Court need not consider any new arguments in regard if raised in Defendants' reply brief. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007).

**VIII.   DEFENDANTS' ARGUMENTS AS TO PLAINTIFF'S THIRD, FOURTH, AND FIFTH CAUSES OF ACTION FAIL AS A MATTER OF LAW. THUS, DEFENDANTS MOTION TO STRIKE IN REGARD MUST BE DISMISSED.**

As noted herein, The California Supreme Court has opined that "a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest." The State's High Court further elaborated that, "A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 621 (2019).

Here, the footage published by the Defendants was private and communicated to a small group. *See* Ex. A generally. Defendants make hazy comparisons between expressive and commercial work, coupled with a claim that their discussing NXIVM is protected under Civil Code Section 3344. ECF No. 246:3-247:22. However, Defendants admit that their publication was (1) based on footage from anonymous

sources, and (2) that some of the footage was "Never intended to be seen by the public." *See* ECF No. 262 Ep 1. at 01:32-01:43; Ep 2. at 00:18-00:22; Ep 3. at 00:21-00:24; Ep 4. at 00:31-00:36.

An anonymous source would not be required if the original footage were public. Further, the anonymous source, and the private setting in which the footage at issue was filmed both buttress Plaintiff's contention that the information was private. *See* Ex. A generally. Thus, such information is not a matter of public interest as a matter of law. This calculus is not altered solely due to Defendants publishing the footage. *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 621 (2019).

Although Civil Code section 3344 provides protection for the use of another's name and likeness in connection with public affairs, *See* Cal. Civ. Code., § 3344, subd. (d)., Defendants' use of Plaintiff's privately filmed name and likeness was not a matter of public interest[1] and is therefore not subject to the protections of Section 3344.

Moreover, Defendants' distinction between expressive and commercial work at ECF 246:7-21 is not supported by any legal authority that places the argument within the anti-SLAPP calculus. Further, Defendants misstate the law on that issue; under California law a claim for appropriation of name and likeness is not limited to commercial purposes only, as claimed by Defendants. Such a claim lies if Plaintiff can show that the use of his name and likeness was to the Defendants' advantage, "commercially or otherwise." *Local TV, LLC v. Superior Court of L.A. Cnty.*, 3 Cal.App.5th 1, 8 (2016). Because Defendants used Plaintiff's name and likeness in a series that was commercially available on commercial streaming platforms, Defendant used Plaintiff's name and likeness to Defendant's commercial advantage and any other advantage related thereto.

---

[1] Counsel is unable to find authority that clearly recognizes the synonymity between "public interest" and "public affairs" it appears the Eastern District treats the two as similar for First Amendment purposes. *See Scott v. Citizen Watch Co. of Am., Inc.,* No. 17-cv-00436-NC, at *10 (N.D. Cal., Apr. 4, 2018.) ["The Court therefore considers the "public interest" and "public affairs" defenses together as a single inquiry grounded in First Amendment concerns."]

## IX. __IN THE ALTERNATIVE, AND IF NECESSARY, PLAINTIFF REQUESTS THAT THE HEARING BE CONTINUED AND HE BE ALLOWED TO CONDUCT LIMITED DISCOVERY.__

In the rare case that the Court finds insufficient evidence to support any or all of Plaintiff's claims, he respectfully asks this court to stay its ruling for limited discovery. While the anti-SLAPP statute by its own terms prohibits discovery after filing of a special motion to strike. Cal. Code Civ. Proc. § 425.16(g) ["All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion."].

As noted by this very court, California's anti-SLAPP statute directly conflicts with Rule 56 of the Federal Rules of Civil Procedure, and thus does not govern federal court procedure. *Rogers v. Home Shopping Network*, 57 F.Supp.2d 973, 982 (C.D. Cal. 1999) ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court."); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846-47 (9th Cir. 2001) (remanding and ordering the district court to allow for discovery of information "in the defendants' exclusive control," despite anti-SLAPP provisions prohibiting it). In ruling on the instant motion, this court is governed by Rule 56, which requires that the non-moving party—here, Plaintiff—be given "the opportunity to discovery information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). As such, Plaintiff should be given the opportunity to conduct discovery before dismissal under the anti-SLAPP statute.

## __CONCLUSION.__

Defendants' deceptively manipulated publications were not a matter of public interest as a matter of law as they are false and based on private information. Further, a comparison of defendants' deceptively manipulated publications to Plaintiffs

evidence, shows that Plaintiff has satisfied the low burden of proving the probability of success in this case and Defendants' motion to strike should thus be dismissed.

For all the forgoing reasons, as to counts One through Five, of Plaintiff's First-Amended Complaint, Plaintiff respectfully requests that this Court dismiss Defendants' Special Motion to

Strike Plaintiff's First-Amended Complaint, thus allowing this case to proceed.

Further, Plaintiff also moves the Court pursuant to Civil Code Section 425.16, subdivision (c), and the authority in *Moore v. Shaw*, 116 Cal.App.4th 182, 199 (2004), for a factual finding that Defendants' motion is frivolous, and an award of attorney fees and costs, as Defendants' own admissions and the state of the evidence in this case conclusively prove that Defendants' Motion to Strike is indeed frivolous.

Dated: March 11, 2022

Respectfully submitted,

/s/ Joseph M. Tully

Joseph M. Tully, CASBN 201187
Tully & Weiss Attorneys at Law
713 Main Street
Martinez, CA 94553
Telephone: (925) 229-9700
Fax: (925) 231-7754
Email: Joseph@Tully-Weiss.com

1  Joseph M. Tully (CASBN: 201187)
2  Tully & Weiss Attorneys at Law
   713 Main Street
3  Martinez, CA 94553
   Phone: (925) 229-9700
4  Fax: (925) 231-7754
   Email: Joseph@Tully-Weiss.com
5

6

7

8  Attorneys for Plaintiff Marc Elliot

9

10

11  **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA**
12

13

14  MARC ELLIOT,                        | Case No.: 2:21-cv-08206-JAK-DFM
         **Plaintiff,**
15                                      | **DECLARATION OF MARC ELLIOT**
                                        | **IN SUPPORT OF PLAINTIFF'S**
16         **v.**                       | **OPPOSITION TO DEFENDANTS'**
                                        | **SPECIAL MOTION TO STRIKE**
17  LIONS GATE FILMS INC., LIONS        | **PLAINTIFF'S FIRST-AMENDED**
    GATE ENTERTAINMENT INC., and        | **COMPLAINT**
18  STARZ ENTERTAINMENT LLC
19
20         **Defendants.**
21

22

23

24

25

26

27

28

## <u>DECLARATION OF PLAINTIFF MARC ELLIOT</u>

I, Marc Elliot, do declare pursuant to Title 28 of the United States Code section 1746 the following:

1. I am familiar with all the footage contained in Exhibit A in support of Plaintiff's Opposition to Defendants Special Motion to Strike Plaintiff's First Amended Complaint, based on my personal knowledge of the footage, and my physical presence in every event identified therein.

2. Based on my personal knowledge of all the footage, the footage is what it purports to be and is an accurate depiction of the matters it contains, and the people it contains.

3. All the footage contained in Exhibit A was recorded in private settings not open to the public, and the footage was never distributed or published to the public.

4. **The "Harvard" of How to Treat Women Footage comprises** two original pieces of footage.

    A. **SOP Footage -** The audio of Keith Raniere came from a weekend training from the company Society of Protectors, put on by Keith Raniere and held in November of 2012. The weekend training explored many different aspects of masculinity to help men build more character and honor in their own lives. I was personally present at this training. I have personal knowledge of Mr. Raniere's voice based on hearing his voice at the training, and within the Defendants' documentary, and I was present when the footage was recorded. Ex. A at SOP Footage.

    B. **JNESS Tracks Footage -** The other footage is my personal testimonial for the JNESS Tracks training. The JNESS Tracks was a training for men and women to explore the similarities and differences between genders and ultimately build more compassion for each other. I gave this testimonial for

the training in or around 2015. I have personal knowledge of the footage in that the footage contains my voice and my likeness, and I was present when it was recorded. Ex. A at JNESS Tracks Footage.

5. **Ethical Science Footage (Nazi Comparison) -** The original footage in this section was taken from an informational session put on by Dr. Porter, Nancy Salzman, and me about the Ethical Science Foundation at an annual corporate retreat about the success of the Tourette's project. This talk took place in or around 2016. I was personally present at the retreat, and I have personal knowledge of the footage in that the footage contains my voice and my likeness, and I was present when it was recorded. EX. A at Ethical Science Footage

6. **ISIS Comparison Footage -** This footage contains the same clips mentioned in the SOP Footage JNESS Tracks Footage above. I was personally present at this training, and I have personal knowledge of Mr. Raniere's voice based on hearing his voice at the training, and within the Defendants' documentary. Further, I have personal knowledge of the footage in that the footage contains my voice and my likeness, and I was present when it was recorded. Ex. A at SOP Footage; JNESS Tracks Footage, respectively.

7. **Source Footage (Dangerousness Instructions to Kill…)** - The original footage in this section came from The Source, a training on acting and human expression. The excerpt shows Keith Raniere teaching a class on how to build "A Character You Have Not Experienced." This class took place in Albany in or around 2015. I was personally present at the training, and I have personal knowledge of the footage in that the footage contains my voice and my likeness, I was present when it was recorded, and I have personal knowledge of Mr. Raniere's voice based on hearing his voice at the training, and within Defendants' documentary. Ex. A at Source Footage.

I declare under penalty of perjury that the foregoing is true and correct, on those matters stated on information and belief, I believe them to be true.

Executed on: March 10, 2022

Respectfully submitted,

/s/ Marc Elliot

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## Lodged and Filed Manually with the Clerk of the Court

[Exhibit A in support of Plaintiff's Opposition to Defendants' Special Motion to Strike Plaintiff's First-Amended Complaint pursuant to California Code of Civil Procedure section 425.16, is Original footage from NXIVM's Society of Protectors Program "SOP Footage;" JNESS Tracks Program "JNESS Footage;" Ethical Science Foundation "Ethical Science Footage;" and The Source Program "The Source Footage."]