JEAN-PAUL JASSY, Cal. Bar No. 205513
  jpjassy@jassyvick.com
MEGHAN FENZEL, Cal. Bar No. 324139
  mfenzel@jassyvick.com
JASSY VICK CAROLAN LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:   (310) 870-7048
Facsimile:    (310) 870-7010

Attorneys for Defendants
LIONS GATE FILMS INC., LIONS GATE
ENTERTAINMENT INC. and STARZ
ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ELLIOT,<br><br>               Plaintiff,<br><br>     vs.<br><br>LIONS GATE FILMS INC., LIONS GATE ENTERTAINMENT INC. and STARZ ENTERTAINMENT, LLC,<br><br>               Defendants. | Case No. 2:21-cv-08206-JAK-DFM<br><br>Honorable John A. Kronstadt<br><br>**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT PURSUANT TO C.C.P. § 425.16**<br><br>Date:   May 9, 2022<br>Time:   8:30 a.m.<br>Crtrm:  10B |

Defendants Lions Gate Films Inc., Lions Gate Entertainment Inc. and Starz Entertainment, LLC ("Defendants") respectfully submit the following Reply to Plaintiff Marc Elliot's Opposition ("Opposition" or "Opp.") to Defendants' Special Motion to Strike the First Amended Complaint ("FAC") Pursuant to California Code of Civil Procedure section 425.16 ("anti-SLAPP Motion" or "Mot.").

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   DESPITE PLAINTIFF'S CONTENTIONS, THE ANTI-SLAPP STATUTE APPLIES TO EACH OF PLAINTIFF'S CLAIMS ........................................... 1

    A.    Defendants' Speech Is Directly Related to Matters of Public Interest .... 1

    B.    The Purportedly "Private" Footage Is Still a Matter of Public Interest ... 3

    C.    Plaintiff Conflates the Two Steps of the Anti-SLAPP Analysis ............. 4

III.  PLAINTIFF FAILS TO SUPPORT HIS DEFAMATION CLAIMS ................ 4

    A.    Plaintiff Attacks Straw Men, as Defendants' Motion Does Not Address the Falsity or Actual Malice Elements of Plaintiff's Defamation Claims ........................................................................... 4

    B.    Plaintiff Does Not Demonstrate That Any of the Alleged Implications Are Reasonably Drawn from the Series ...................................................... 5

    C.    Plaintiff Does Not Detail How the Purported Implications Are "Of and Concerning" Him ................................................................................ 7

    D.    Plaintiff Ignores Defendants' Argument That the Purported Implications Do Not Convey Verifiable Statements of Fact ................... 7

IV.  PLAINTIFF ALSO FAILS TO SUPPORT HIS ANCILLARY CLAIMS ....... 8

    A.    Contrary to Plaintiff's Contentions, Superfluous Ancillary Claims Are Appropriately Struck Through Anti-SLAPP Motions ............................. 8

    B.    Plaintiff Fails to Support the Merits of His "Appropriation" Claim ....... 9

V.   THERE IS NO NEED OR BASIS TO PERMIT DISCOVERY ....................... 9

VI.  CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alszeh v. Home Box Office*,
   67 Cal. App. 4th 1456 (1998).................................................................................5

*Balzaga v. Fox News Network, LLC*,
   173 Cal. App. 4th 1325 (2009)............................................................................5, 6

*Church of Scientology v. Wollersheim*,
   42 Cal. App. 4th 628 (1996)...................................................................................3

*City of Costa Mesa v. D'Alessio Investments, LLC*,
   214 Cal. App. 4th 358 (2013).................................................................................2

*Comstock v. Aber*,
   212 Cal. App. 4th 931 (2012).................................................................................2

*Doe v. Gangland Prods., Inc.*,
   730 F.3d 946 (9th Cir. 2013)...............................................................................3, 4

*DuPont Merck Pharm. Co. v. Superior Ct.*,
   78 Cal. App. 4th 562 (2000)...................................................................................4

*Equilon Enters v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002).............................................................................................3

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019).........................................................................................2, 3

*Forsher v. Bugliosi*,
   26 Cal. 3d 792 (1980)............................................................................................5

*Gilbert v. Sykes*,
   147 Cal. App. 4th 13 (2007)...................................................................................8

*Haight Ashbury Free Clinics v. Happening House Ventures*,
   184 Cal. App. 4th 1539 (2010)...............................................................................4

*Hall v. Time Warner, Inc.*,
   153 Cal. App. 4th 1337 (2007)...............................................................................4

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021).................................................................................10

*Jackson v. Mayweather*,
   10 Cal. App. 5th 1240 (2017)........................................................................ 3, 4, 8

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................. 10

*Leidholt v. L.F.P., Inc.*,
    860 F.2d 890 (9th Cir. 1988) ............................................................................... 9

*Local TV, LLC v. Superior Ct.*,
    3 Cal. App. 5th 1 (2016) ...................................................................................... 9

*McGarry v. University of San Diego*,
    154 Cal. App. 4th 97 (2007) ............................................................................ 5, 8

*Monterey Plaza Hotel v. HERE Local 483*,
    69 Cal. App. 4th 1057 (1999) .............................................................................. 5

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ........................................................................................... 4

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ............................................................................... 4

*Rand Resources, LLC v. City of Carson*,
    6 Cal. 5th 610 (2019) ....................................................................................... 3, 9

*Tatum v. City & County of San Francisco*,
    441 F.3d 1090 (9th Cir. 2006) ........................................................................... 10

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................... 9, 10

Fed. R. Civ. P. 26(d)(1) .......................................................................................... 9

Fed. R. Civ. P. 56 ............................................................................................ 9, 10

## I. INTRODUCTION

Plaintiff failed to confront the fundamental points in Defendants' anti-SLAPP Motion, which showed that Plaintiff's claims all fail as a matter of law. Contrary to Plaintiff's contentions, Defendants satisfied the first step in the anti-SLAPP analysis by showing that Plaintiff's claims arise from the Series, which is about the controversial NXIVM, its leaders (including the admittedly "nationally recognized" Plaintiff), its activities, and its victims, all of which are matters of public interest.

In his Opposition, Plaintiff does not satisfy his burden to show that the FAC has merit; instead, he fights straw men. Plaintiff emphasizes that Defendants used editing techniques to make, in his view, false implications. But Plaintiff's Opposition ignores the defamation elements that are actually at issue here. The anti-SLAPP Motion carefully explained how the purported implications about Plaintiff cannot, as a matter of law, reasonably be drawn from the Series, and are not directly about Plaintiff. Plaintiff's Opposition ignored that analysis and failed to substantiate the reasonableness of the purported implications. The anti-SLAPP Motion also showed how the implications, even if they could be drawn from the Series, were not viable because they do not convey verifiable statements of fact. The Opposition ignores this point too. Without verifiable implications, there are no defamation claims.

According to clear authority, and contrary to Plaintiff's contentions, the ancillary claims fall with the defamation claims, and there is no viable claim for using Plaintiff's name and image within the expressive Series. No discovery could help Plaintiff's allegations, and, in any event, the Ninth Circuit disallows evidence in opposition to an anti-SLAPP motion styled as a motion to dismiss, such as the anti-SLAPP Motion here. Defendants' anti-SLAPP Motion should be granted in full.

## II. DESPITE PLAINTIFF'S CONTENTIONS, THE ANTI-SLAPP STATUTE APPLIES TO EACH OF PLAINTIFF'S CLAIMS.

### A. Defendants' Speech Is Directly Related to Matters of Public Interest.

Plaintiff's claims all arise from Defendants' speech and alleged speech

concerning NXIVM—including NXIVM's leaders, members, and cult-like and criminal activities—and Plaintiff's connections to NXIVM. Mot. 7:13-11:8; First Amended Complaint ("FAC") ¶¶ 70, 84, 98, 111, 115, 121-123.[1] Contrary to Plaintiff's contention, Defendants do not rely on a "synecdoche theory," Opp. 12:22-25, stretching to connect their speech with a "slight reference" to a broader public issue, *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 152 (2019).

Plaintiff and Defendants both cite *FilmOn*, 7 Cal. 5th at 145, for the proposition that speech concerning an activity "in the context of an ongoing controversy" falls within the ambit of the anti-SLAPP statute. Opp. 10:14-17; Mot. 7:21-8:4, 10:17-11:8. There is no dispute that NXIVM was a controversial program, and that the controversy surrounding NXIVM persists today, fueled in part by devotees such as Plaintiff who continues to publicly "voice his opinion on" what he describes as "the wrongful conviction of Mr. Raniere." Opp. 12:19-20.[2] The Series, including its references to Plaintiff, "further[s] the public conversation on an issue of public interest" by exposing NXIVM's hiding of serious crimes under the friendly veneer of a self-help organization. *FilmOn*, 7 Cal. 5th at 153; FAC ¶ 3; Mot. 3-4.

Plaintiff and Defendants also both cite *FilmOn* for the rule that speech concerning a person "in the public eye" falls within the ambit of the anti-SLAPP statute. Mot. 7:21-8:4 (citing *FilmOn*, 7 Cal. 5th at 145); Opp. 10:14-18 (same). Plaintiff does not dispute that he is a limited purpose public figure who, according to his own allegations, is "nationally recognized," including for his role as a leader in NXIVM. Mot. 9:17-10:16 (citing FAC ¶¶ 14-32); *see also* Opp. 12:18, 15:11-26.

---

[1] A defendant bringing an anti-SLAPP motion may deny making *alleged* statements, while still arguing that the statements, even if made, would fall within the ambit of the anti-SLAPP statute as to the first step in the anti-SLAPP analysis. *City of Costa Mesa v. D'Alessio Investments, LLC*, 214 Cal. App. 4th 358, 367-69, 375 (2013); *Comstock v. Aber*, 212 Cal. App. 4th 931, 942 (2012).

[2] *See also id.* 13:3-4 (Plaintiff expressing his "opinion on fundamental fairness within the criminal justice system"); FAC ¶¶ 36-37 (Plaintiff defending NXIVM and Raniere); Request for Judicial Notice ("RJN") Ex. 2 at 33-36 (same), Ex. 5 (same).

Plaintiff publicly promoted the promise of NXIVM and Porter, providing the tangible and prominent example of his work overcoming Tourette Syndrome.  FAC ¶¶ 22-32; Mot. 10:8-16.  Later, Plaintiff was one of the few high-ranking NXIVM members not implicated in the criminal cases who continued to publicly support Raniere and NXIVM.  FAC ¶¶ 36, 36; RJN, Ex. 1, Ep. 4 at 1:18:17, Ex. 5.  Unlike *Rand Resources, LLC v. City of Carson*, 6 Cal. 5th 610, 626 (2019), where discussions about individual decisionmakers were unrelated to the public interest, Plaintiff's participation as a public face of NXIVM, and his association, endorsement and defense of NXIVM, Raniere and Porter, are all related to the public interest in how NXIVM recruited and messaged to members.

### B. The Purportedly "Private" Footage Is Still a Matter of Public Interest.

Even if some footage for the Series was "never intended to be seen by the public," Opp. 11:16-17, that does not negate its public interest.[3]  Under Plaintiff's faulty logic, widespread, but secret, corruption, and whistleblower matters would not be in the public interest.  But, as stated in *FilmOn*, courts have long recognized that the anti-SLAPP statute "may protect private events and conversations."  7 Cal. 5th at 146.  Matters of public interest may "involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650 (1996).[4]  Moreover, case law supports the application of anti-SLAPP law to otherwise private materials revealed in the public interest.  *See, e.g., Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955-57 (9th Cir. 2013) (discussion of topic of gang violence was sufficiently a matter of public interest to apply anti-SLAPP statute to claims even if the specific revelation of plaintiff's secret identity was not); *Jackson v. Mayweather*, 10 Cal. App. 5th 1240,

---

[3] Defendants do not agree that hours of professional footage—including testimonials promoting NXIVM—are private.  *See* Opp. 14; RJN, Ex. 1, Ep. 2 at 13:19.

[4] Disapproved on other grounds, *Equilon Enters v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002).

1254-55 (2017) (claims arising from defendant's speech about plaintiff's abortion and cosmetic surgery involved matters of public interest); *Hall v. Time Warner, Inc.,* 153 Cal. App. 4th 1337, 1347 (2007) (claims arising from interview in a nursing home of the retired housekeeper for a deceased celebrity was a matter of public interest).

### C. Plaintiff Conflates the Two Steps of the Anti-SLAPP Analysis.

Plaintiff incorrectly asserts that *allegedly* false speech does not fall within the ambit of the anti-SLAPP statute. Opp. 11:21-14:11. Plaintiff's argument conflates the two steps of the anti-SLAPP analysis: "any claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the context of the discharge of the plaintiff's burden [under step two] to provide a prima facie showing of the merits of the plaintiff's case." *Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002).[5] If mere allegations of falsity were sufficient, then no defamation claims would ever be dismissed pursuant to an anti-SLAPP motion.[6] Defendants satisfied the first step; thus, "the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims." *Doe*, 730 F.3d at 953. Plaintiff did not satisfy his burden.

### III. PLAINTIFF FAILS TO SUPPORT HIS DEFAMATION CLAIMS.

#### A. Plaintiff Attacks Straw Men, as Defendants' Motion Does Not Address the Falsity or Actual Malice Elements of Plaintiff's Defamation Claims.

Plaintiff is correct that, as a public figure, to succeed on his defamation claims,

---

[5] *See also Haight Ashbury Free Clinics v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1549 (2010) ("whether or not [defendant's] statements were false does not determine whether they constitute protected activity for purposes of the SLAPP statute," as falsity is addressed in second step of the anti-SLAPP analysis); *DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal. App. 4th 562, 566 (2000) (same).

[6] Plaintiff cites *Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010), for the proposition that "manipulated" speech does not qualify for protection under the anti-SLAPP statute, but this misrepresents the holding. The parties in *Price* did "not dispute that this action arises from an act in furtherance of free speech in connection with a public issue; the report was broadcast on national television and featured issues of widespread public interest"—the issue was only whether Plaintiff had met his burden under step two. *Id.* at 1000.

he would ultimately have to prove that the speech at issue was false and that Defendants acted with actual malice. *See, e.g.,* Opp. 7:5-9:14, 15:11-26; *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 112-114 (2007). But Defendants' anti-SLAPP motion did not attack the falsity or actual malice elements of Plaintiff's defamation claims.[7] Plaintiff's defamation claims fail as he did not establish *other* essential elements: Defendants neither directly published nor reasonably implied anything defamatory about Plaintiff; the purportedly defamatory implications are not "of and concerning" Plaintiff; and the alleged implications—even if they exist and are about Plaintiff—do not convey verifiable statements of fact. Mot. 11:15-22:26.

### B. Plaintiff Does Not Demonstrate That Any of the Alleged Implications Are Reasonably Drawn from the Series.

No reasonable viewer could have reasonably drawn the alleged implications from the Series as a matter of law, and Plaintiff fails to show otherwise. Plaintiff does not dispute that there are no direct defamatory statements about Plaintiff, and he does not dispute that there is a high bar for defamation by implication claims. *See* Opp. 6–7, 14–15; *cf.* Mot. 11:18–14:8 (discussing *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980); *Alszeh v. Home Box Office*, 67 Cal. App. 4th 1456 (1998); *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1338 (2009); *Monterey Plaza Hotel v. HERE Local 483*, 69 Cal. App. 4th 1057, 1065 (1999)). Nor does Plaintiff dispute that the Court should decide as a matter of law whether a reasonable viewer may draw defamatory implications from a work. *See Balzaga*, 173 Cal. App. 4th at 1342-43; *Monterey Plaza Hotel*, 69 Cal. App. 4th at 1065.

Plaintiff concedes a primary holding in *Balzaga*: statements in a broadcast must be taken in context, and a court can hold that a reasonable viewer could not have "received" an impression advanced by the plaintiff. Opp. 14:19-24 (quoting

---

[7] Defendants reserve the right to address falsity and actual malice later, if necessary.

*Balzaga*, 173 Cal. App. 4th at 1339).[8]  As in *Balzaga*, no reasonable viewer would view the Series in full, parse the 45 seconds with Plaintiff, and find defamatory implications that, *e.g.*, "Plaintiff supports violence against women."  *Cf.* Opp. 15:7-10.  Plaintiff fails to support the extreme implications that his FAC alleges.

As Defendants examine in depth over four pages and Plaintiff fails to rebut, *none* of Plaintiff's five claimed implications are reasonably supported in the context of the Series.  *See* Mot. 14-17; *cf.* Opp.  Without any reference to context as the law requires, Plaintiff just regurgitates his colorful assertions that the Series implies he "is as dangerous as an ISIS and Al-Qaida terrorist," "condones the murder, rape and mutilation of women," "is a weaponized, violent person capable of killing at the command of Mr. Raniere," "perpetrates experiments just like the Nazis did," and "is ready to act violently at Mr. Raniere's command." Opp. 9:1-9.  These accusations are not stated directly in the Series about Plaintiff, nor are they reasonably supported by a contextual viewing of the Series and the 45 seconds with Plaintiff.

The only purported implication Plaintiff's Opposition actually addresses at all is the first, in which Plaintiff's testimonial follows an audio recording of Raniere discussing male "impulses."  *See* Opp. 13–14; *cf.* Mot. 14–15.  Plaintiff does not dispute that he gave a video testimonial on NXIVM's gender trainings.  Opp. 13:25-28.  Plaintiff alleges that the editing in the Series made him appear "sinister." *Id.*  All documentaries require editing, but the issue is whether the editing satisfies the high bar of creating the implication that Plaintiff alleges.  It does not.  Plaintiff does not address that his testimonial is in an obviously different (outdoor, daytime) setting from Raniere's talk, nor that it is one of several testimonials featured in that segment,

---

[8] Plaintiff points to *dicta* in *Balzaga* that it is *possible* that a single sentence can support a libel action, *see* Opp. 5:21-23, 6:27-7:1, but Plaintiff ultimately concedes—as he must—that the overall context informs where an implication is reasonable as a matter of law.

including one where the topic was "how to relate to women." *See* Opp. 13–14; RJN, Ex. 1, Ep. 2 at 13:19; *cf.* Mot. 14:19-15:18. He simply fails to rebut the Motion.

The Series simply depicts Plaintiff as an individual in the settings where other relevant events occurred. Plaintiff attended NXIVM gender trainings and, like others, gave a positive video testimonial about them. FAC ¶¶ 40-45; RJN, Ex. 1, Ep. 2 at 13:18, 20:24. Plaintiff appeared on panels with the former Dr. Porter, who later had his medical license revoked for ethics concerns about his "fright experiments." FAC ¶ 51; RJN, Ex. 1, Ep. 2 at 29:43; Ex. 6. Plaintiff attended Raniere's "Ethicist Course" seminar. FAC ¶¶ 55, 58, 59; RJN Ex. 1, Ep. 2 at 39:44. Plaintiff promoted NXIVM as a recruiter before the criminal prosecution. FAC ¶¶ 27–32. Plaintiff spoke publicly in support of Raniere since his conviction. FAC ¶¶ 33–37. These facts are shown through Plaintiff's allegations and judicially noticeable material. Without confronting Defendants' arguments, Plaintiff asks the Court to ignore context and read implications of Plaintiff as a "Nazi," "ISIS," "al Qaeda," "rapist," etc. into 45 seconds of footage. Opp. 8-9. But beyond repeating these claims, Plaintiff makes no argument to support the existence of these extreme implications as a matter of law.

### C. Plaintiff Does Not Detail How the Purported Implications Are "Of and Concerning" Him.

Plaintiff does not dispute that, even if the purported implications were reasonably drawn—which Defendants disagree is possible as a matter of law—such implications are not "of and concerning" Plaintiff directly or by clear implication. Mot. 17:20-18:10. If anything, the pertinent parts of the Series target NXIVM, Raniere and Porter. *Id.* Plaintiff's Opposition does not rebut Defendants' positions.

### D. Plaintiff Ignores Defendants' Argument That the Purported Implications Do Not Convey Verifiable Statements of Fact.

Plaintiff completely ignores one of Defendants' core arguments: even if the purported implications were reasonable and even if they were clearly about Plaintiff, they cannot support a defamation claim because they do not convey verifiable

statements of fact. Mot. 18:11-22:26. For example, even if the Series *did* imply that Plaintiff supported a "sinister" or "repulsive" view of the relationship between men and women as Plaintiff claims, that would be a matter of opinion. Opp. 9:3-5, 13:25-28; *see also McGarry*, 154 Cal. App. 4th at 117 ("an amorphous assertion of immoral behavior is within the range of statements of opinion that are not actionable"). Defendants' Motion went through the broad context, specific context and language of the purported implications, and demonstrated that the purported implications cannot support Plaintiff's defamation claims because they are nonactionable and constitutionally protected opinion and/or hyperbole. Mot. 18:11-22:26. Plaintiff has no answer for any of this, which is another reason his defamation claims must fail.

## IV. PLAINTIFF ALSO FAILS TO SUPPORT HIS ANCILLARY CLAIMS.

### A. Contrary to Plaintiff's Contentions, Superfluous Ancillary Claims Are Appropriately Struck Through Anti-SLAPP Motions.

California courts routinely hold that claims based on the same facts as a failed defamation claim should be struck pursuant to the anti-SLAPP statute. For example, in *Jackson*, the Court of Appeal held that a false light claim should have been stuck pursuant to the anti-SLAPP statute because "when a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." 10 Cal. App. 5th at 1264-65 (internal quotation marks omitted). And in *Gilbert v. Sykes*, the Court of Appeal dismissed claims for defamation and intentional infliction of emotional distress under the anti-SLAPP statute, holding that "the collapse of the defamation claim spells the demise of all other causes of action in the same complaint which allegedly arise from the same publication." 147 Cal. App. 4th 13, 34 (2007). Here, Plaintiff does not dispute that his ancillary claims are all based on the same portions of the same publication—*i.e.,* the Series. As such, the ancillary claims fall with the defamation claim.

### B. Plaintiff Fails to Support the Merits of His "Appropriation" Claim.

Plaintiff does not—because he cannot—dispute that there are constitutional and statutory exceptions to "appropriation" claims for the use of a name and/or likeness in expressive works discussing matters of public interest and public affairs. *See* Mot. at 24:3-25:22. Furthermore, there is no dispute that the Series as a whole is an expressive work discussing public affairs and matters of public interest. And, as discussed above, just because material allegedly was originally private does not mean that its contents are not part of a greater story that is a matter of public interest.[9]

Plaintiff cites *Local TV, LLC v. Superior Ct.*, 3 Cal. App. 5th 1 (2016), but that case does not assist him. In *Local TV*, the plaintiff alleged that his name and image impermissibly suggested that the plaintiff endorsed defendants' web content. *Id.* at 8-9. Here, there is no allegation that Defendants used Plaintiff's name or likeness in advertising or to suggest Plaintiff's endorsement of the Series. And, contrary to Plaintiff's contention, the *Local TV* court reiterated that a statutory misappropriation claim requires "*a direct connection* between the alleged use and the *commercial purpose*," which Plaintiff does not allege here either. *Id.* at 13 (emphasis added). And, contrary to Plaintiff's argument, Opp. 17:22-25, an expressive work sold for a profit does not "extend a commercial purpose" to the contents of the expressive work. Mot. 24:16-19 (citing *Leidholt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988)).

### V. THERE IS NO NEED OR BASIS TO PERMIT DISCOVERY.

Federal Rule of Civil Procedure 26(d)(1) generally prohibits discovery at this stage of a case absent a court order. No court order is warranted here. Defendants' anti-SLAPP motion was brought using the motion to dismiss standards of Rule 12(b)(6), not the summary judgment standards of Rule 56. *See* Notice of Mot. 1:11-12. The stipulation and Court Order setting the briefing schedule specifically noted that Defendants' anticipated anti-SLAPP motion would be styled as a motion to

---

[9] Plaintiff cites *Rand Res.*, but there was no "appropriation" claim in that case.

1  dismiss. Dkt. 21 at 3:3-6; Dkt. 22 at 1:25-27. Discovery is not necessary to rule on a
2  motion brought pursuant to Rule 12(b)(6) standards. Defendants only ask the Court
3  to consider material that can be judicially noticed, which is permitted under Rule
4  12(b)(6), without converting the motion to one for summary judgment. *See generally*
5  RJN (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Plaintiff
6  did not oppose Defendants' Request for Judicial Notice. Defendants, however, do
7  object to and oppose Plaintiff's non-judicially noticeable purported evidence. In
8  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1154-56 (9th Cir. 2021), the Ninth
9  Circuit, affirmed the rejection of the plaintiff's purported evidence filed in response
10 to the defendant's anti-SLAPP motion brought under Rule 12(b)(6) standards. As in
11 *Herring Networks*, the Court here can decide, as a matter of law, on the submitted
12 materials that the anti-SLAPP statute applies and that Plaintiff has not satisfied his
13 burden to substantiate his claims. *Id*. at 1156-61.[10]

## VI.  CONCLUSION

Far from being frivolous, Defendants' anti-SLAPP motion should be granted in full without leave to amend. Amendment is not warranted because Plaintiff did not ask for leave to amend his complaint a second time, he did not articulate what he would or could amend, and because no amendment to Plaintiff's pleadings will change the nature of the Series. The Series is constitutionally protected several times over, and Plaintiff's claims necessarily fail as a matter of law.

Dated:   March 25, 2022            /s/ Jean-Paul Jassy
                                   Counsel for Defendants

---

[10] Moreover, even if Rule 56 applied here (which it does not) Plaintiff failed to satisfy any of the prerequisites for seeking discovery because he did not (and cannot) articulate: (1) facts indicating a likelihood that controverting evidence exists as to a material fact; (2) specific reasons why such evidence was not discovered or obtained earlier in the proceedings (especially, if, as he contends, it is within his control); (3) the steps or procedures by which he proposes to obtain such evidence within a reasonable time; or (4) an explanation of how those facts will suffice to defeat the pending motion. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1101 (9th Cir. 2006).