1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARC ELIOTT,<br><br>       Plaintiff,<br><br>  v.<br><br>LIONS GATE ENTERTAINMENT CORPORATION, STARZ INC., and STARZ ENTERTAINMENT, LLC,<br><br>       Defendants. | Case No. 2:21-cv-08206-SSS-DFMx<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16 [Dkt. 25]** |

Before the Court is a special motion to strike (the "Motion") pursuant to C.C.P. § 425.16 filed by Defendants Lions Gate Films Inc., Lions Gate Entertainment Inc., and Starz Entertainment, LLC ("Defendants").  [Dkt. 25]. Defendants move to strike Plaintiff Marc Elliot's ("Plaintiff") First Amended Complaint ("FAC") [Dkt. 11] in its entirety and ask that the Court enter an award of attorneys' fees and costs pursuant to C.C.P § 425.16(c).

In connection with their motion, Defendants have filed a request for judicial notice of several exhibits.  [Dkt. 26 at 2].  Plaintiff did not file any opposition.  Defendants have also moved to strike Plaintiff's Exhibit A in support of his brief in opposition to Defendant's Motion.  [Dkt. 32].

The Motion is fully briefed. [Dkt. 25, 29, 31].  On October 28, 2022, the Court held a hearing on this matter with both parties' counsel present. [Dkt. 48].  For the reasons set forth below, the Motion is **GRANTED** and the FAC is **DISMISSED** without leave to amend.

## I.     BACKGROUND

Defendants are the producers and distributors of a four-part documentary series entitled *Seduced: Inside the NXIVM Cult* (the "Series").  The titular NXIVM was a "personal development" and "self-improvement" company founded in 1998 by Keith Raniere and Nancy Salzman. [Dkt. 11 at ¶ 20].  In 2018, NXIVM closed its operations following an FBI investigation into allegations of sex trafficking and other serious crimes perpetrated by its senior leadership against NXIVM members.  Several of those investigated have since been convicted; Raniere is currently serving a 120-year sentence in federal prison.  [*See* Dkt. 26-3 (Exh. 2)].  The Series uses the personal experiences of former NXIVM member India Oxenberg as a "vehicle to…criticize the inner workings" and alleged "nefarious dealings" of NXIVM.  [Dkt. 25 at 31].

Over the course of four episodes, it interweaves first-person accounts, commentary by "cult experts," footage from NXIVM trainings and events, and

1    other materials to develop an "unabashedly critical" narrative of NXIVM and its

2    leadership.  The Series culminates with the criminal prosecutions of Raniere and

3    others.  [*Id*. at 31].

4         Plaintiff is a former NXIVM member and is portrayed only briefly in

5    Defendants' Series.[1]  Plaintiff first encountered NXIVM's Executive Success

6    Program ("ESP") in 2009 and began taking ESP courses.  Plaintiff represents

7    that ESP enabled him to overcome his lifelong, previously debilitating

8    Tourette's Syndrome. Thereafter, Plaintiff's involvement with NXIVM grew.

9    He became a full-time ESP instructor and salesperson, participated in other

10   NXIVM courses and programs, and worked closely with Raniere and Salzman

11   to publicize the impact NXIVM's trainings had on his life. [Dkt. 11 at ¶ 20-32].

12        After NXIVM closed in 2018, Plaintiff planned to offer a presentation

13   "explor[ing] his journey of overcoming Tourette's through ESP training and the

14   negative press against him and NXIVM."  He cancelled the presentation only

15   after a federal prosecutor threatened to indict him for perceived recruitment on

16   behalf of an organization which was, by that time, under intense legal scrutiny.

17   [*Id.* at ¶ 33-37].  Plaintiff has never been accused of or faced prosecution for any

18   offense related to his involvement with NXIVM.  [Dkt. 25 at 12].

19        Plaintiff alleges that the scenes in which he appears, and the Series

20   overall, portray him in a false, defamatory light.  On this basis, Plaintiff brings

21   five causes of action for (1) defamation per se, (2) defamation by implication,

22   (3) appropriation of name or likeness, (4) false light, and (5) intentional

23   infliction of emotional distress.  [Dkt. 11 at ¶ 70-129].

24

25

26

27   [1] Specifically, Plaintiff appears in Episode 1 shortly after the 10-minute mark,
     Episode 2 at approximately the 20- and 40-minute marks, and Episode 4 at
28   approximately the 1 hour and 18 minute-mark.  Plaintiff does not appear at all in
     Episode 3.  [Dkt. 26-1 at ¶ 2 (Decl. of Meghan Fenzel)].

## II.    EVIDENTIARY ISSUES

### A. Defendants' Request for Judicial Notice

Defendants request that this Court take judicial notice of: (1) lodged video files of each episode of the Series [(Exh. 1), *see* Dkt. 27]; (2) official court records from *United States v. Raniere* (No. 1:18-cr-00204-NGG-VMS) in the Eastern District of New York [Dkt. 26-3 (Exh. 2)]; (3) the fact that there has been "significant news media coverage of NXIVM and Keith Raniere" [Dkt. 26-4 (Exh. 3), 26-5 (Exh. 4), and 26-6 (Exh. 5)]; and (4) official New York State Department of Health's Office of Professional Misconduct and Physician Discipline Record for Brandon Porter [Dkt. 26-7 (Exh. 6)].

Generally, a district court may not consider any material beyond the pleadings when ruling on a motion to dismiss.  Fed. R. Civ. P. 12(b)(6); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  This rule is subject to two exceptions.  First, under the "incorporation-by-reference" doctrine, the court may notice materials "properly submitted as part of the complaint."  *Lee*, 250 F.3d at 688. This encompasses exhibits cited in and attached to the complaint as well as any other materials on which the plaintiff's complaint "necessarily relies," so long as their "authenticity ... is not contested."  *Id.*

Second, a court may consider documents or facts that are judicially noticeable pursuant to Federal Rule of Evidence 201.  Fed. R. Evidence 201(d) ("The court may take judicial notice at any stage of the proceeding"); *Khoja v. Orexigen Therapeutics Inc*., 899 F. 3d 988, 998 (9th Cir. 2018).  The Federal Rules provide for judicial notice of any fact "not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evidence 201(b).

### i.      Lodged Video Files of the Series (Exh. 1)

All of Plaintiff's claims pertain to Defendants' portrayal of him in the Series.  For this reason, his FAC refers to the Series extensively, and includes detailed descriptions of the scenes that give rise to Plaintiff's allegations.  The Court therefore finds that the video files of the Series constitute materials upon which the FAC "necessarily relies," and may be considered under the incorporation-by-reference doctrine.  Defendants' lodged Exhibit 1 is judicially noticed as evidence of the content of Defendants' Series, although not for the truth of the statements made therein.

### ii.     Court Records in *United States v. Raniere* (Exh. 2)

Defendants seek judicial notice of the docket report and filings in *United States v. Raniere*.  Although they do not specify the purpose for which they believe these materials should be noticed, they indicate that they are relevant because Raniere's prosecution is the focus of the Series' fourth episode and because they reflect Plaintiff's relevance to those proceedings.

A court's official records are considered reliable public records not subject to reasonable dispute under the Federal Rules of Evidence.  They may be noticed for facts concerning what took place *during* or in connection with the court proceedings only.  This means that a court may notice another court's records for information regarding how a case progressed, what was argued by the parties, and on what basis the court ruled on a motion.  *Mendez v. Optio Solutions, LLC*, 219 F. Supp. 3d 1012, 1014-15 (S.D. Cal. 2016) (internal citations omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of Plaintiff's briefs in prior litigation to determine what had been "actually litigated" in that case in order to address issue preclusion questions).  It may not, however, take judicial notice of another court's opinions, orders, or records "for the truth of the facts recited

1   therein." *Mendez v. Optio Solutions, LLC*, 219 F. Supp. 3d 1012, 1014-15 (S.D.
2   Cal. 2016) (internal citations omitted).

3        The Court therefore takes judicial notice of Defendants' Exhibit 2 for the
4   fact that Raniere has been convicted of and sentenced to prison for crimes
5   including sex trafficking, forced labor, and racketeering in connection with
6   NXIVM [Dkt. 26-3 at 26-29].

7   **iii.      Media Coverage of Raniere, NXIVM, and Plaintiff (Exh. 3, 4,**
8   **and 5)**

9        Defendants request judicial notice of the materials in their Exhibits 3, 4,
10  and 5.  Exhibit 3 contains local and national news stories published about
11  Raniere and NXIVM over the course of several years prior to any criminal
12  investigation.  Exhibit 4 contains media coverage from 2017 and throughout the
13  criminal investigation and trial.  Finally, Exhibit 5 contains two published
14  images of Plaintiff speaking to the press after Raniere's sentencing, both with
15  captions identifying Plaintiff as one of Raniere's "supporters." Defendants
16  contend that these materials are noticeable for "the fact that NXIVM and
17  Raniere have been the subject of extensive media coverage," and are relevant
18  because they help to demonstrate both the public's "interest" in NXIVM and
19  Raniere and Plaintiff's own "role as a public figure in the NXIVM scandal."
20  [Dkt. 26 at 4-6].

21       In defamation cases, courts commonly take judicial notice of relevant
22  publications to illustrate what "was in the public realm at the time, [although]
23  not whether the contents of those articles were in fact true." *Makaeff v. Trump*
24  *Univ., LLC*, 715 F.3d 254, 259 (9th Cir. 2013) (quoting *Von Saher v. Norton*
25  *Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)).  The
26  Court therefore takes judicial notice of the media coverage reflected in
27  Defendants' exhibits, and considers the weight of this evidence under the
28  "public issue" prong of the anti-SLAPP analysis (*see* Part IV-A, below).

1

2   **iv.    New York State Department of Health Records (Exh. 6)**

3        Finally, Defendants request that the Court take judicial notice of the

4   official New York State Department of Health's Office of Professional

5   Misconduct and Physician Discipline record for Brandon Porter [Dkt. 26-7

6   (Exh. 6)].  This request is denied because the Court finds these materials not

7   relevant to the resolution of Defendants' Motion.  *See Meador v. Pleasant*

8   *Valley State Prison*, 312 F. App'x 954, 956 (9th Cir. 2009).

9        **B. Defendants' Objections to Plaintiff's Exhibit A**

10        In support of his opposition to Defendant's Motion, Plaintiff has lodged

11   an exhibit containing seven video clips (Exh. A).  These clips portray various

12   NXIVM training and events at which Plaintiff was present, either as an attendee

13   or as a presenter.  [Dkt. 29 at 21-24 (Decl. of Marc Elliot)].  The allegedly

14   defamatory portions of Defendants' Series incorporate partial and/or edited

15   versions of the materials in Plaintiff's exhibit.

16        Plaintiff indicates that the original footage he has provided, when

17   compared to the contested portions of Defendant's Series, demonstrate that

18   Defendants "deceptively manipulated" their source material to convey "false"

19   messages about Plaintiff.  [*Id.* at 13, 14].  Defendants object to Plaintiff's

20   Exhibit, citing multiple provisions of the Federal Rules of Evidence.  [Dkt. 32].

21        As set forth below, the Court finds that Plaintiff's claims are subject to

22   dismissal regardless of whether Defendants in fact 'manipulated' their source

23   footage.  As such, the Court therefore concludes that Plaintiff's Exhibit A is

24   irrelevant.  *See* Fed. R. Evid. 402 (only relevant evidence is admissible); Fed. R.

25   Evid. 401 (evidence is relevant only if it pertains to a "fact that is of

26   consequence to the determination of the action").

27

28

# III.   LEGAL STANDARD

Defendants bring their Motion to Strike pursuant to pursuant to C.C.P. § 425.16 (California's "anti-SLAPP" statute).[2]  The statute provides that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.   C.C.P. § 425.16(b)(1).

To succeed on an anti-SLAPP motion to strike, the defendant must make a "prima facie showing" that the plaintiff's suit arises from an act both (a) "in furtherance of the defendant's constitutional right to free speech," *Herring Networks*, 8 F.4th 1148, 1155 (9th Cir. 2021), citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013), *and* (b) "in connection with a public issue," *Hilton v. Hallmark Cards, 599 F.3d 894, 903-08* (9th Cir. 2010).

If the defendant satisfies this requirement, "[t]he burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks*, 8 F.4th at 1155. To harmonize California's anti-SLAPP statute with the Federal Rules of Civil Procedure, the Ninth Circuit has instructed California district courts to apply one of two different standards in reviewing plaintiff's claims depending on the basis for defendant's motion.  *Planned Parenthood, Inc. v. Center for Medical*

---

[2] The statute applies to state law claims whether brought in state or federal court. *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 966-67 (N.D. Cal. 2013), citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999).

1   *Progress,* 890 F.3d 828, 834 (9th Cir. 2018).  Where defendant's motion asserts

2   only legal deficiencies in plaintiff's complaint, a court is to conduct its analysis

3   under a Rule 12(b)(6) standard. *Planned Parenthood*, 890 F.3d at 833; *Herring*

4   *Networks*, 8 F.4th at 1156. When a defendant's motion challenges the factual

5   adequacy of plaintiff's allegations, then a Rule 56 standard controls and the

6   parties will be entitled to conduct discovery before the court rules on the

7   motion.

8           Defendants state explicitly in their Motion that the FAC "fail[s] as a

9   matter of law." [Dkt. 25 at 1, 2].  Their arguments address only the legal

10  sufficiency of the FAC, and the Court has considered extrinsic materials only to

11  the extent that they are judicially noticeable.  *See* Part II-A above; *United States*

12  *v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (a court may consider

13  "documents…incorporated by reference in the complaint, or matters of judicial

14  notice…without converting the motion to dismiss into a motion for summary

15  judgment").

16          Rule 12 standards therefore govern the Court's second-step anti-SLAPP

17  analysis.  Plaintiff is not entitled to conduct discovery in connection with this

18  Motion.[3]  [*See* Dkt. 29 at 18].

19                          **IV.    DISCUSSION**

20          **A. Step One: Defendants' Conduct in Furtherance of First**

21              **Amendment Rights and about a Public Issue**

22          First, a defendant moving to strike pursuant to California's anti-SLAPP

23  statute must establish that the activity the plaintiff challenges was undertaken

24

25  _____

26

27  [3] As set forth in the next section, Plaintiff's claims are foreclosed by the content
    and nature of the Series itself.  Even if the Court were to allow discovery, it
28  would not be necessary or helpful to its analysis of Plaintiff's claims.

"in furtherance" of defendant's free speech rights.  For this purpose, it will suffice if the activity is "communicative," or evinces "[a]n intent to convey a particularized message…and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903-04 (9th Cir. 2010) (internal citations omitted).  Documentaries like Defendants' Series readily meet this standard.  *See, e.g., Doe v. Gangland Productions, Inc., 730 F.3d 946*, 952-53 (9th Cir. 2013); *Jackson v. Netflix, Inc.*, 506 F.Supp.3d 1007 (C.D. Cal. 2020). The fact that Defendants also intended to make money from the Series does not affect this analysis.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) (a work that is simultaneously expressive *and* commercial, so that it does something "more than propose a commercial transaction," is "entitled to full First Amendment protection").

Second, the defendant must demonstrate that its challenged speech act is "in connection with" a "public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4).  California state courts, as well as federal courts applying California law, have found this requirement met where the expressive work concerned a "person or entity in the public eye," "conduct that could directly affect a large number of people beyond the direct participants," or "topic of widespread, public interest."  *Hilton*, 599 F.3d at 906-07 (collecting California state court decisions); *see also FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145 (2019).  Speech addressing some "ongoing controversy, dispute or discussion" also qualifies. *Cross v. Cooper*, 197 Cal. App. 4th 357, 383 (2011).  Matters of concern only to the speaker and a "small, specific audience," however, do not.  *Hilton*, 599 F.3d at 906-07.  Nor can a defendant "turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."  *Id.*, citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1131-33 (2003).

1    Here, Defendants contend that the Series falls within the scope of anti-
2    SLAPP's protections because (1) NXIVM and the criminal prosecutions of its
3    leadership are topics of "ongoing controversy" and substantial public interest,
4    (2) Plaintiff Marc Elliot is a limited purpose public figure and therefore a matter
5    of public interest in his own right, and (3) Plaintiff's involvement in NXIVM
6    and ongoing support for Raniere are themselves matters of public interest. [Dkt.
7    29 at 18-22].

8         The Court agrees that the Series pertains to matters of public interest and
9    discussion.  As the judicially noticeable materials submitted by Defendant
10   demonstrate, major media outlets devoted substantial attention to NXIVM, its
11   leadership, and the experiences of its members for many years before the Series
12   was released.  *See Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628
13   (1996) (relying on the fact of widespread media coverage to conclude that the
14   Church of Scientology and associated controversies were public issues for anti-
15   SLAPP purposes).

16        Furthermore, the Court finds that Plaintiff himself is connected to the
17   public interest and controversy surrounding NXIVM.  Plaintiff has consistently
18   and voluntarily made himself part of the NXIVM story.  Plaintiff worked for
19   many years as a NXIVM instructor and salesperson.  [Dkt. 11 at ¶ 32].  He
20   served as an "assistant producer" and "prominent subject" in a purportedly
21   award-winning 2017 film documenting his use of NXIVM's ESP techniques to
22   manage his Tourette's syndrome.  [*Id.* at ¶ 30].  And as Defendants' Exh. 5
23   shows, Plaintiff has continued to support Raniere even after NXIVM disbanded.

24        Plaintiff maintains that Defendants cannot satisfy the "public issue" prong
25   because the scenes to which he objects include footage of NXIVM sessions that
26   were "never intended to be seen by the public."  [Dkt. 29 at 12].  Here, Plaintiff
27   misconstrues the applicable law.  The cases Plaintiff cites stand only for the
28   proposition that a defendant cannot *transform* a private issue into a public one

1    simply by publishing and circulating information about it.  However, a

2    defendant's publication of private communications between private individuals

3    *will* fall under anti-SLAPP so long as the public's interest predates defendant's

4    publication.  *FilmOn*, 7 Cal. 5th at 146.  And clearly, Defendants did not

5    manufacture public interest in NXIVM or in Plaintiff by publishing the video at

6    issue.

7    **B. Step Two: Legal Sufficiency of Plaintiff's Allegations**

8    Because Defendants have satisfied step one, the burden shifts to Plaintiff

9    to demonstrate that his causes of action could survive a motion to dismiss under

10   a Rule 12 standard.

11   To assess the legal sufficiency of the complaint, the court must look to

12   each of the plaintiff's claims to determine whether he has alleged both a

13   cognizable legal theory as to defendant's liability and sufficient "factual

14   content" to allow the court to "draw the reasonable inference that the defendant

15   is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663

16   (2009). 678 (internal quotation marks omitted).

17   In accordance with the Federal Rules' liberal pleadings standards, a

18   plaintiff should be granted leave to amend his complaint following a successful

19   motion to strike unless the Court finds "undue delay, bad faith or dilatory

20   motive on the part of the [plaintiff], repeated failure to cure deficiencies by

21   amendments previously allowed, undue prejudice to the opposing party by

22   virtue of allowance of the amendment, [or] futility of amendment." *Sharkey v.*

23   *O'Neal,* 778 F.3d 767, 774 (9th Cir. 2015), citing *Foman v. Davis*, 371 U.S.

24   178, 182 (1962).

25   An amendment would be futile if there is no set of facts that can be

26   proved which would constitute a valid claim. *Miller v. Rykoff–Sexton, Inc.*, 845

27   F.2d 209, 214 (9th Cir. 1988).  Futility alone is sufficient to justify denial of

28   leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

-12-

All of Plaintiff's claims arise from his portrayal in the Series, which is limited to four brief scenes.  In the first scene in the Series involving Plaintiff ("Scene 1," in Episode 1), a still image of Plaintiff speaking into a microphone appears briefly.  There is no voice-over.  On-screen text states Plaintiff's name and identifies him as a "NXIVM Recruiter."

The second scene ("Scene 2," in Episode 2), begins with footage of an unidentified event space.  This image is accompanied by audio of Raniere, who makes a series of vulgar, violent comments about women and men's attitudes towards the opposite sex.  Next, the scene shifts to a clip of Plaintiff speaking directly into the camera in a talking-head interview format.  He is identified in the caption as a "NXIVM Proctor."  Plaintiff states that "no one has ever taught us how to relate to women…this is, in my opinion, the Harvard of trying to relate to women."

The third scene ("Scene 3," also in Episode 2) includes Raniere on stage, stating that "you can understand killing when you feel it is necessary…" The scene cuts to an image of Plaintiff holding a microphone and nodding, then returns to Raniere, then moves to footage of the siege at Waco, then to footage of Jim Jones and the Jonestown massacre.

The fourth and final scene in which Plaintiff appears ("Scene 4," Episode 4) includes text that reads: "NXIVM Loyalists still practice 'readiness' drills.  In July 2020, a group of loyalists started dancing beneath the window of Keith Raniere's prison cell in Brooklyn."  Alongside the text, there is a brief clip of Plaintiff dancing in front of what appears to be a prison.

###### i.      First Cause of Action (Defamation Per Se)

In his First Cause of Action for defamation per se, Plaintiff asserts that Defendants, "through the use of edited video and audio clips, voice-overs, written content, and statements taken out of context," "communicated" to the

Series' audience that "Plaintiff is dangerous, has been trained to kill, is capable of killing himself if told to, and condones sexual violence against women." [Dkt. 11 at ¶ 70].

To state a claim for defamation per se, the plaintiff must identify a false statement, made by defendant, "of and concerning" the plaintiff, that is defamatory "on its face." *Yow v. National Inquirer, Inc.*, 550 F.Supp.2d 1179, 1183 (E.D. Cal. 2008). A statement is defamatory on its face if there is no "need for extrinsic evidence to explain the statement's defamatory nature." *Id.*; *see also Washburn v. Wright*, 261 Cal.App.2d 789, 797 (Cal. Ct. App. 1968) ("Material libelous *per se* is a false and unprivileged publication by writing which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.").

The only explicit statements made about Plaintiff in any of the four scenes – or indeed, anywhere in the Series – assert that he was a NXIVM recruiter and instructor. These cannot be defamatory because they are true. Plaintiff's First Cause of Action is therefore **STRUCK** for failure to state a claim. Leave to amend this claim is **DENIED** as futile.

**ii.      Second Cause of Action (Defamation by Implication)**

To state a claim for defamation by implication, the plaintiff must allege that defendant's "published material is reasonably susceptible of an interpretation which implies a provably false [and otherwise defamatory] assertion of fact." *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001). This requires that plaintiff's interpretation of defendant's work is *reasonable*; that the alleged implications convey *objective facts* rather than opinions, *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); and that the challenged implications are not "substantially true," *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697, 142 Cal. Rptr. 3d 40 (2012).

-14-

Plaintiff identifies four defamatory assertions he believes are implied by the Defendants' portrayal of him in the Series.

First, Plaintiff claims that the Series suggests that he was a "recruiter and member of a purported sex cult." [Dkt. 11 at ¶ 40]. Plaintiff does not contest that he participated in, instructed, and encouraged others to join various NXIVM programs. [Dkt. 11 at ¶ 32]. However, he maintains that the Series improperly associates him with NXIVM's purported "sex cult," and that this implication is defamatory as he did not participate in the specific secret society within NXIVM (known as "DOS") where much of the alleged sexual abuse occurred.

These allegations do not amount to a defamation claim. A "plaintiff may not construct an actionable statement by reading whatever implication it wishes into" defendant's work. *Metabolife*, 264 F.3d at 854. A reasonable viewer would not understand the Series to suggests that Plaintiff participated in or was involved in any abuse himself. It does imply that Plaintiff was a devoted member of an organization whose leader has been implicated in a range of serious sexual crimes, but this assertion – however unflattering – is substantially true. "Substantial truth" is a defense to defamation under California law, and a statement is substantially true so long as its "substance…gist…[or] sting… can be justified." *D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270, 1287-88 (C.D. Cal. 2000); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) ("[T]he statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").

Second, Plaintiff argues that the Series suggests that he "supported and encouraged violence and misconduct against women." [Dkt. 11 at ¶ 45]. He specifically contends that this implication arises from Scene 2, which includes a long and vulgar comment, condoning men sexually "conquering" women, made by Raniere during a meeting of the NXIVM men's group "Society of

1    Protectors" (SOP), followed by a testimonial Plaintiff stating that "[n]o one has

2    ever taught us how to relate to women, nowhere, in all the education of my

3    whole life" and extolling JNESS as the "Harvard of trying to relate to women."

4    Plaintiff alleges that "a viewer would reasonably assume that Plaintiff's glowing

5    review [of JNESS] referred to Raniere's statement [at SOP]" and, therefore, that

6    Plaintiff "supported and encouraged" the kind of sexual violence Raniere had

7    espoused.  [*Id.* at ¶ 44, 45].

8         To determine whether a communication carries a defamatory meaning,

9    "context…must be considered."  *Balzaga v. Fox News Network, LLC*, 173 Cal.

10   App. 4th 1325, 1338 (2009) (internal citations omitted, cleaned up).  The

11   "publication in question must be considered in its entirety" to "understand… the

12   effect which it was calculated to have on the [viewer]." *Id.*  A court should not

13   treat "each portion" of the work as a "separate unit."  *Id.*

14        While Scene 2 might, if viewed in isolation, be understood to suggest that

15   Plaintiff was offering a direct endorsement of Raniere's preceding comments,

16   the larger context of Episode 2 demonstrates otherwise.  The two scenes

17   Plaintiff juxtaposes are part of a broader exploration of Raniere's attitudes

18   towards women.  This segment incorporates Raniere's comments, and NXIVM

19   members' reactions to them, in a variety of different settings.  A reasonable

20   viewer might interpret Scene 2 to suggest Plaintiff agreed with Raniere's

21   teachings generally, but not that Plaintiff's testimonial was a direct endorsement

22   of the message that preceded it.

23        Third, Plaintiff argues that the Series suggests that he, as a member of

24   NXIVM, has been "weaponized" like a follower of "ISIS [or] Al-Qaeda" might

25   be.  [Dkt. 11 at ¶ 50].  He indicates that this implication arises from scenes,

26   including Scene 3, in which 'cult experts' draw parallels between NXIVM and

27   infamous organizations including ISIS, Al-Qaeda, the People's Temple

28

1   (infamous for the massacre at Jonestown), and Branch Davidians (associated
2   with the siege at Waco).

3        As an initial matter, it is hardly clear that a reasonable viewer would
4   interpret these segments in the ways Plaintiff suggests.  The "cult experts"
5   featured in the Series refer to only broad similarities between NXIVM and the
6   other organizations named, and largely suggest that NXIVM *might* have
7   escalated in analogous ways had it not been disbanded.

8        But even assuming these segments carry the implication Plaintiff
9   identifies, such an implication cannot be defamatory because it does not
10  constitute an assertion of fact. In making this determination, a court should
11  consider whether the "general tenor" of the work negates the impression that
12  defendants were asserting objective facts, whether Defendants used hyperbolic
13  language, and whether the challenged implication could be proven either true or
14  false.  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); *see also*
15  *Thomas v. Los Angeles Times Communication LLC*, 189 F. Supp. 2d 1005 (C.D.
16  Cal. 2002).  An assertion that someone has been "weaponized" cannot be
17  proven true or false.  And in the context of the series, any comparisons between
18  NXIVM and violent terrorist organizations are readily understood as speculative
19  and exaggerated.

20       Lastly, Plaintiff argues that the Series indicates that he has "been trained
21  to kill and is capable of killing himself or others if so instructed." [*Id.* at ¶ 84;
22  *see also* Dkt. 29 at 8-9].  Plaintiff alleges that this implication arises primarily in
23  Scene 3. [Dkt. 11 ¶ 55-59].  As previously noted, the reasonable viewer is
24  unlikely to draw any provably false assertions of fact about NXIVM from this
25  scene.  Moreover, Plaintiff's appearance in this segment is so brief that it seems
26  unlikely that a viewer would understand Defendants to be conveying any
27  message about Plaintiff at all.

28

Because Plaintiff has failed to allege any defamatory implications that may be reasonably drawn from the Series, his Second Cause of Action is **STRUCK**.  The Court has reviewed the Series in its entirety and finds that it conveys no potentially defamatory statements or implications about Plaintiff. On this basis, it concludes that there is no set of facts Plaintiff could allege to state a claim for defamation based upon Defendants' work.  Leave to amend the Second Cause of Action is **DENIED** as futile.

### iii.    Third Cause of Action (Appropriation of Name or Likeness)

To state a claim for common law misappropriation, the plaintiff must allege that the defendant used his identity (name or likeness), to defendant's advantage (commercially or otherwise), without plaintiff's consent, causing plaintiff injury.[4]  *Downing v. Abercrombie &* Fitch, 265 F.3d 994, 1001 (9th Cir. 2001).

Under both the common law cause of action and the statutory cause of action "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Id.*, citing *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995).  NXIVM is, as previously discussed, a matter of public interest.  And as California's courts have held, even private individuals cannot state a claim for misappropriation for their portrayal in a publication concerning a public matter. *See Dora v. Frontline Video, Inc.*, 15 Cal.App.4th

---

[4] In California, a plaintiff may allege misappropriation of his name or likeness under common law and/or pursuant to California Civil Code § 3344.  Plaintiff does not specify which kind(s) of misappropriation claims he intended to bring here.  However, the statutory cause of action requires the plaintiff to first "prove all the elements of the common law cause of action." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  Because the Court finds Plaintiff has not stated a common law claim, it necessarily concludes he cannot have stated a statutory claim either.

536, 543 (1993) (rejecting a non-celebrity surfer's claim arising from defendants' unauthorized inclusion of footage of him in their surfing documentary, reasoning that while "any one of [the surfers] as individuals may not have had a particular influence on our time, as a group they had great impact.").

As such, Plaintiff's Third Cause of Action is **STRUCK**.  Leave to amend is **DENIED as futile.**

> ### iv.  Fourth and Fifth Causes of Action (False Light and Intentional Infliction of Emotional Distress)

The "collapse" of a plaintiff's defamation claim "spells the demise of all other causes of action" arising from the allegedly defamatory work.  *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34 (2007).  Here, Plaintiff's false light and intentional infliction of emotional distress claims are based entirely upon his portrayal in the Series, equal to his defamation claims.  Because this Court has struck Plaintiff's First and Second Causes of Action for defamation, Plaintiff's Fourth and Fifth Causes of Action are also **STRUCK**.  Leave to amend is **DENIED as futile.**

///
///
///
///
///
///
///
///
///
///
///

# V.    CONCLUSION

For the foregoing reasons, Plaintiff's FAC and all causes of action alleged are **DISMISSED WITH PREJUDICE.**  Defendants are hereby **ORDERED** to file their application for attorneys' fees and costs no later than December 2, 2022.[5]

**IT IS SO ORDERED.**

Dated: November 8, 2022

_____
SUNSHINE S. SYKES
United States District Judge

---

[5] If a defendant's special motion to strike under anti-SLAPP succeeds, that defendant is entitled to attorney's fees and costs.  *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022), citing Cal. Civ. Pro. Code § 425.16(c).